## STATE v. JOSEPH HAAS.

159 N. W. (2d) 118.

May 3, 1968—No. 40,376.

*John J. Scanlan,* for appellant.

*Douglas M. Head,* Attorney General, *Joseph P. Summers,* Corporation Counsel, and *Daniel A. Klas,* Special Assistant Corporation Counsel, for respondent.

ROGOSHESKE, JUSTICE.

Defendant was convicted by an all-male jury in the municipal court of St. Paul upon a charge of intentionally using the mails to convey an obscene letter (received in evidence at trial as exhibit A) in violation of Minn. St. 617.26, which provides in pertinent part:

"Every person who shall deposit * * * in any post-office in the state * * * any of the articles or things specified in section 617.241 * * * with the intent of having the same conveyed by mail * * * shall be guilty of a misdemeanor."

The articles or things specified in § 617.241 are "any obscene book, magazine, pamphlet, paper, writing, card, advertisement, circular, print, picture, photograph, motion picture film, play, image, instrument, statue, drawing, or other article which is obscene." "Obscene" is defined for the purpose of this section as follows:

"* * * Whether to the average person, applying contemporary community standards, the dominant theme of the material taken as a whole appeals to prurient interests."[1]

This appeal from the judgment was submitted without oral argument. The briefs of both defendant and the prosecution are addressed to numerous questions dealing with search and seizure; the admissibility of a large number of pornographic magazines, pamphlets, and other materials seized from defendant's home, his mother's home, and his automobile; entrapment; the instructions of the court; preemption by the Federal government of prosecution for mailing prohibited material; and misconduct of the prosecutor. Regrettably, none of these questions include the issue which we are compelled to regard as dispositive, namely, whether § 617.26 was intended to prohibit the conveyance by mail of a private, sealed, obscene letter between consenting adult parties. This issue may have been impliedly raised by defendant in his motion for dismissal at the close of the prosecution's case in chief, for it included the assertion that recent United States Supreme Court cases "appear" to require a public mailing.[2] However, the issue was not clearly specified and the record makes it doubtful whether it was in fact presented or ruled upon.

Apart from the myriad of perplexing problems confronting the trial court before and during trial, it finally developed after the testimony was closed that the primary issue litigated narrowed to whether the letter upon which the charge was based was obscene. Indeed, defendant readily admitted that in response to letters written to him he wrote the letter, sealed it in an envelope, and deposited it for mailing addressed to E. Bueland, Box 308, Watford City, North Dakota. Unknown to defendant, the soliciting letters were written by a Federal postal inspector, the

---

[1] The constitutional standard for judging obscenity first established by Roth v. United States, 354 U. S. 476, 77 S. Ct. 1304, 1 L. ed. (2d) 1498.

[2] Defendant in his argument to the trial court referred to Ginzburg v. United States, 383 U. S. 463, 86 S. Ct. 942, 16 L. ed. (2d) 31, rehearing denied, 384 U. S. 934, 86 S. Ct. 1440, 16 L. ed. (2d) 536; and Manual Enterprises, Inc. v. Day, 370 U. S. 478, 825 S. Ct. 1432, 8 L. ed. (2d) 639.

addressee being fictitious.[3] Further, by his testimony defendant took the position that he did not regard any of the letters he had written as "filthy or lewd or obscene." He insisted that "they are just letters, facts of life, what goes on, experiences which we all know." He acknowledged, however, that he would not have written them, including exhibit A, had he thought they might violate "a law regarding obscenity." Although arguing entrapment by the postal inspector, defendant's testimony erased any evidentiary support for submission of that issue, and the only issue submitted to the jury was whether exhibit A was obscene.

Since the letter makes no pretense of serving any other purpose than a vile and sordid appeal to the prurient interests of the unfortunate persons assumed to be the recipients, the jury finding that it was obscene by statutory definition could readily be upheld. However, we need not discuss the statutory or current constitutional tests for judging obscenity of this type of pornographic material.[4] Nor need we reach the questions posed by defendant and perhaps other more difficult questions concerning governmental power to censor private consensual correspondence which could have been raised. For our disposition of this appeal, we assume that the letter is obscene.

Despite this assumption, we are nevertheless compelled to reverse the

---

[3] At the time he mailed the letter, defendant assumed that "E. Bueland" was the "lonely" wife of a couple who had initiated correspondence with him. In three soliciting letters, "they" described "themselves" as "a broad minded couple" with a firm belief in hedonism, whose "hobbies include[d] photography, nudism, the cultures, and making new acquaintances." In each of the three letters, defendant was urged with increasing persuasiveness to be as "frank" as he liked in relating any "unusual" experiences. The "couple" was the Federal postal inspector. Provoked by the complaint of one who had previously received a letter regarded as obscene and believed written by defendant, the inspector assumed the role of the married couple and finally the "lonely" wife and came into possession of exhibit A, defendant's third letter, in which he described in sordid detail a sexual experience with a woman in a motel room.

[4] Lockhart and McClure, *Censorship of Obscenity: The Developing Constitutional Standards,* 45 Minn. L. Rev. 5. See, e. g., Luros v. United States (8 Cir.) 389 F. (2d) 200.

conviction in accordance with United States v. Chase, 135 U. S. 255, 10 S. Ct. 756, 34 L. ed. 117, upon the ground that the offense charged was not intended to be prohibited by the statute upon which it was based. The word "letter" is not specifically prohibited by our statute. This was equally true of the Federal statute at the time the Federal authorities undertook to prosecute defendant Chase upon an essentially identical charge. In that case, it was held that a private, sealed letter was not a "writing" within the meaning of the Federal statute. In our case, as in Chase, the only specified category which arguably could embrace a private letter is the word "writing." The argument in Chase that the word "writing" is comprehensive enough to include, and was intended to include, "letter" was rejected for the reason that "[n]either in legislative enactments nor in common intercourse are the two terms, 'letter' and 'writing,' equivalent expressions. When, in ordinary intercourse, men speak of mailing a 'letter' or receiving by mail a 'letter,' they do not say mail a 'writing' or receive by mail a 'writing.'" United States v. Chase, 135 U. S. 258, 10 S. Ct. 757, 34 L. ed. 119. The court concluded:

"We do not think it a reasonable construction of the statute to say that the vast mass of postal matter known as 'letters' was intended by Congress to be expressed in a term so general and vague as the word 'writing,' when it would have been just as easy, and also in strict accordance with all its other postal laws and regulations, to say 'letters' when letters were meant; and the very fact that the word 'letters' is not specially mentioned among the enumerated articles in this clause is itself conclusive that Congress intended to exclude private letters from its operations." 135 U. S. 259, 10 S. Ct. 757, 34 L. ed. 119.

For these and other reasons expressed in the Chase opinion, we reach the conclusion that even though the offense charged might fall within the apparent policy of the statute, it was not intended to be included. Any other interpretation would give too broad a meaning to the common and approved usage of the word "writing"; would not resolve all reasonable doubts concerning legislative intent in favor of the defendant as required by the rule of strict construction applicable to penal statutes;

and, in effect, would create a criminal offense not contemplated by the legislature. Minn. St. 609.01, 645.08(1, 3), 645.16; State v. End, 232 Minn. 266, 45 N. W. (2d) 378.

It should be noticed that while the appeal was pending in Chase the Federal statute was amended to add the word "letter" to the list of articles declared nonmailable. Even though the prosecution of the offense charged is now clearly contemplated by the Federal statute, and no one could validly question the predominant interest of the Federal government in the enforcement of the copious laws and regulations governing the use of the mails, Federal prosecution of cases of this type is as a matter of policy not generally initiated. Redmond v. United States, 384 U. S. 264, 86 S. Ct. 1415, 16 L. ed. (2d) 521. In that case a husband and wife were convicted under the Federal statute of using the mails to transmit undeveloped film and prints of each other posing in the nude. Before defendants' appeal to the United States Supreme Court was heard on the merits, the government requested the court to order a dismissal of the conviction as contrary to government policy, in that prosecution of persons who have willingly exchanged private letters, although obscene, "should be the exception confined to those cases involving repeated offenders or other circumstances which may fairly be characterized as aggravated." 384 U. S. 265, 86 S. Ct. 1416, 16 L. ed. (2d) 522. In ordering dismissal, three members of the United States Supreme Court took occasion to record their views that the conviction should be reversed "not because it violates the policy of the Justice Department, but because it violates the Constitution."

Since there is no indication that defendant in this case is a repeated offender, nor any evidence of aggravated circumstances such as the exploitation of obscene private correspondence for commercial gain as in United States v. Zuideveld (7 Cir.) 316 F. (2d) 873; nonconsensual correspondence as in United States v. Darnell (2 Cir.) 316 F. (2d) 813; or "pandering" denounced in Ginzburg v. United States, 383 U. S. 463, 86 S. Ct. 942, 16 L. ed. (2d) 31, rehearing denied, 384 U. S. 934, 86 S. Ct. 1440, 16 L. ed. (2d) 536, Federal prosecution of defendant was likely unavailable. Although the record indicates that the

prosecution of defendant was instituted in good faith upon the not unreasonable belief that the charge constituted a violation of our statute, we have little doubt that a refusal to prosecute cases of this type involving private noncommercial correspondence in a state forum would be accepted as a proper exercise of prosecutory discretion.

Reversed.