## JAMES MICHAEL DENIKOS *v.* STATE OF MARYLAND

[No. 508, September Term, 1969.]

*Decided June 30, 1970.*

The cause was argued before MURPHY, C.J., and ANDERSON, MORTON, ORTH, and THOMPSON, JJ.

*E. Richard McIntyre* for appellant.

*Francis X. Pugh, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, William A. Linthicum, State's Attorney for Montgomery County,* and *Barry H. Helfand, Assistant State's Attorney for Montgomery County,* on the brief, for appellee.

MURPHY, C.J., delivered the opinion of the Court.

Appellant was found guilty by a jury on June 4, 1969 of unlawfully possessing marihuana, the offense then being designated a felony.[1] On appeal from that judgment, it is contended that the trial judge erred in admitting into evidence over appellant's objection a quantity of marihuana found as a result of a search of his person by the arresting police officer. The question turns on whether probable cause existed for the warrantless arrest, the search of appellant's person having been conducted as an incident thereof.

Evidence as to the existence of probable cause to arrest appellant without a warrant was adduced at a pretrial hearing held on his motion to suppress the incriminating marihuana. The motion was denied. At the trial held several months later before the same judge, virtually the same evidence was adduced before the jury, the trial judge, defense counsel, and the State's Attorney all apparently believing, erroneously, that despite the court's conclusion that probable cause existed to make the warrantless arrest, it was nevertheless the jury's function ultimately to pass upon the legality of the arrest and of the ensuing search and seizure.[2] We think it proper in

---

1. By Chapter 237 of the Acts of 1970, effective April 15, 1970, the possession of marihuana is designated a misdemeanor. The Act specifies that its provisions shall apply to judgments not final on its effective date; hence, the offense of which appellant stands convicted now is a misdemeanor. See *Oberlin v. State,* 9 Md. App. 426.

2. The matter is one exclusively for the court's determination. *Cleveland v. State,* 8 Md. App. 204; *Price v. State,* 7 Md. App. 131.

the circumstances to consider the evidence at both hearings in determining whether the arrest, search and seizure were lawful.

The evidence showed that on June 28, 1968, the police obtained a warrant to search the apartment occupied and leased by Randy Schwartz in Rockville, it being alleged in the warrant, and its accompanying affidavit, that marihuana and hashish were being sold from and concealed on the premises; that a police officer had purchased a quantity of marihuana from Schwartz at his apartment on June 26; and that Schwartz indicated to him at that time that he had further quantities of the drug for sale. A police team consisting of Officers Hamm, Mosley and Wilson executed the search warrant at approximately 6:00 p.m. on June 28. Upon entering the premises, the officers immediately arrested Schwartz, his wife, and brother, after which Wilson was detailed to keep them in the living room under observation while Hamm and Mosley undertook a search of the premises, beginning with the rear of the apartment.[3] The searching officers found a quantity of marihuana and hashish in the apartment, along with implements used for smoking the drugs. Thereafter, at approximately 6:25 p.m., the appellant knocked at the door of the apartment and was admitted to the premises. Upon seeing Officer Wilson, he made inquiry concerning the presence of the police within the apartment; he was told by Wilson that the police were conducting a search under a search warrant. Appellant said he had come to the apartment to obtain his sport coat, which was in the closet. He was told to sit down. Wilson testified that appellant asked him, again and

---

3. A search warrant is issued only for the purpose of making a search. It does not operate as an arrest warrant. While a directive to make an arrest is customarily included as one of the commands of the warrant, such directive is a conditional one—valid only if the search reveals the commission of an offense, in which event the arrest is for the offense revealed by the search. Hence, officers armed with a search warrant for particular premises are not thereby invested with authority to arrest and/or search all persons found therein. *Salmon v. State*, 2 Md. App. 513.

again, what the officers were doing in the apartment; that although he was told several times, he didn't seem able to comprehend; that appellant "was laughing, not out loud, just like a giggle"; that he was told to keep quiet by the Schwartzes; that he was restless, wouldn't keep still, and "kept standing up, moving around"; that appellant was "glassy eyed" and blinked abnormally; that his eyes "were more or less starey"; that he did not smell of alcohol; that he continued laughing; and that he had long hair—"what people usually refer to as the hippie type of hairdo." Wilson, a police officer for almost twelve years, testified that he did not arrest appellant when he first entered the apartment; that "in his mind" he arrested appellant when he concluded "from the way he looked" and "by his actions" that he was under the influence of and may have had in his possession a narcotic drug. Wilson stated that at that time marihuana had been found in the apartment and that he knew that it was a place where marihuana was sold. He did not search the appellant.

Wilson did not tell either Hamm or Mosley—both of whom were still searching in the back of the apartment — that appellant was on the premises. Appellant requested, and Wilson granted him permission to use the bathroom. Appellant then proceeded down the apartment hallway toward the bathroom where, for the first time, he was observed by Hamm. Hamm testified that appellant had long hair, was dressed in "rather loud clothing," that his eyes were "bright," that he was laughing as he came down the hallway and appeared "jittery." Upon seeing Hamm, and without Hamm having spoken to him, appellant said, "hey man, am I busted." Hamm, a police officer since 1952, testified that he had made a number of arrests of narcotics users, including marihuana users, and that he believed, based on his experience, that appellant was under the influence of some kind of narcotic drug. He indicated that his opinion in some part was influenced by his knowledge that a number of drug users wear their hair long and also dress in loud clothing.

Hamm arrested appellant, searched his person, and seized therefrom a quantity of marihuana.[4]

The trial judge concluded from the evidence, including appellant's own testimony admitting that he had been on the premises on several prior occasions, that both Hamm and Wilson had probable cause to believe that the Schwartz apartment was a place where narcotics were possessed and sold; that appellant was familiar with the apartment and from his behavior and appearance, and in view of the circumstances, the police could be reasonably certain that appellant "was under the influence of a narcotic drug and that they had probable cause to believe that he was in possession of a narcotic drug"; that "if he was indeed under the influence of a narcotic he had to have recently been in possession of it"; and that the evidence was such as indicated to the experienced police officers that appellant had probably committed the felony of possessing a prohibited narcotic drug, thus justifying his arrest and the search of his person conducted incident thereto.

That the police officers were validly on the Schwartz premises under the search warrant is not disputed; therefore, if the officers observed the commission of a crime while lawfully executing the warrant, they were empowered to arrest and search the offender—not under the authority of the search warrant—but under their general authority to make a warrantless arrest for a misdemeanor committed in their presence, or upon probable cause to believe that a felony had been or was being committed and that the person to be arrested committed it. *Salmon v. State, supra.* But, as we held in *Franklin v. State,* 8 Md. App. 134, once a narcotic drug is ingested and assimilated into the taker's bodily system, it is no longer within his control and/or possession in the sense contem-

---

4. From Hamm's testimony, is appears clear that he believed he had the right to search appellant under the authority of the search warrant simply because appellant was found on the premises. That officers armed with a search warrant to search specified premises are not so authorized is, of course, entirely clear. *Salmon v. State, supra.*

plated by Maryland Code, Article 27, Section 277.[5] Of course, evidence showing that a person has a prohibited narcotic drug within his system, while not *per se* constituting possession or control thereof, would obviously tend to show circumstantially that he was in possession of the drug prior to taking it. *Franklin,* at page 138. Where then, as here, a person appears to a police officer to be under the influence of a prohibited narcotic drug, that officer may make a warrantless arrest of that person if he has probable cause in the constitutional sense to believe that the felony of illegal possession or control of a narcotic drug has been committed by such person. In this context, probable cause is said to exist when the facts and circumstances within the knowledge of the arresting officer are sufficient to warrant a reasonably cautious person in believing that a felony had been committed by the person arrested. *Simms v. State,* 4 Md. App. 160. The rule of probable cause is itself a non-technical conception of a reasonable ground for belief of guilt requiring less evidence for such belief than would justify a conviction, but more evidence than would arouse a mere suspicion. *Edwardsen v. State,* 243 Md. 131; *Leatherberry v. State,* 4 Md. App. 300. In other words, an officer is not required to have sufficient evidence to convict at the time of the arrest, but only probable cause. *Cornish v. State,* 6 Md. App. 167. It is "only the probability, and not a *prima facie* showing of criminal activity [which] is the standard of probable cause." *Spinelli v. United States,* 391 U.S. 933. That the expertise of the arresting police officers in narcotics cases may be an important factor in assessing the existence of probable cause is well settled. *Taylor v. State,* 9 Md. App. 402; *Oberlin v. State, supra.*

We do not think it matters in the circumstances of this case whether the arrest was made by Wilson or Hamm. Even if Wilson's "arrest" of appellant be deemed illegal, he did not search appellant, so that a subsequent arrest

---

5. This Section, under which appellant was indicted, makes it unlawful, *inter alia,* to "possess" or have under "control" a prohibited narcotic drug.

and search by Hamm, if legal, would not be vitiated by Wilson's prior action. *See Hewitt v. State,* 242 Md. 111; *Mercer v. State,* 237 Md. 479; *Kalandras v. State,* 6 Md. App. 480; *Reagan v. State,* 4 Md. App. 590. We think the record before us contains a sufficient evidentiary foundation to enable the trial judge to intelligently assess whether the arrest had a basis amounting to probable cause in the constitutional sense. Considering the background against which appellant was arrested, in light of all the evidentiary circumstances disclosed by the record, particularly appellant's conduct and actions, and the prior expertise of Hamm in narcotics cases, we cannot say that the trial judge erred in finding the arrest lawful. That the officer was entitled to search appellant after the arrest is, of course, clear; he was authorized to search his person for evidence of the crime for which the arrest was made, namely possession of prohibited narcotic drugs.

Appellant next contends that his conviction must be reversed because under Chapter 237 of the Acts of 1970, applicable to his nonfinal judgment of conviction (see footnote 1), the possession of marihuana is denominated a misdemeanor; and that as his arrest was found legal under the rule permitting warrantless arrests based upon probable cause to believe that a felony had been committed, and not upon the more stringent test applicable to misdemeanor offenses, *viz.,* that such an arrest is authorized only if the misdemeanor is committed in the officer's presence, a new trial must therefore be awarded. In *Oberlin v. State, supra,* we held that it was the only purpose of Chapter 237 to change the criminal penalties for marihuana related drug offenses, and particularly to reduce the punishment for the unlawful possession of marihuana and to change the grade of the offense from a felony to a misdemeanor. While the "provisions" of the Act are clearly applicable to appellant's case, nothing in those provisions even remotely supports his contention that a new trial must be awarded. Indeed, Chapter 238 of the Acts of 1970—like Chapter 237 an emergency measure effective from the date of its passage—provides that a police

officer may arrest a person without a warrant if he has probable cause to believe that he has committed any violation of the drug laws (including the unlawful possession of marihuana) specified in Sections 276 through 313D of Article 27 (whether a felony or a misdemeanor) "as they shall be amended from time to time." We think that Chapters 237 and 238 stand in *pari materia* and indicate clearly that it was not the legislative intention in enacting Chapter 237 to award new trials thereunder for the reasons urged by appellant.[6]

Under Chapter 237, the maximum sentence that can be imposed upon a person convicted as a first offender for possessing marihuana is imprisonment for one year, a $1,000 fine, or both. Appellant was sentenced to two years' imprisonment. The sentence was suspended after appellant served thirty-seven days in jail and he was placed upon probation. We think the two year sentence, even though suspended, is illegal under Chapter 237 and must be corrected.

> *Judgment affirmed, except as to the sentence; sentence vacated; case remanded for imposition of sentence under Chapter 237 of the Acts of 1970.*

---

6. Chapter 403 of the Acts of 1970, to take effect July 1, 1970, is the State's newly enacted comprehensive drug law. *See Oberlin v. State, supra* and *Nutt v. State,* 9 Md. App. 501. That Act provides by way of the standard governing arrest, search and seizure (Section 298) that "any violation of any provision of this subheading, shall be deemed to be a felony for purposes of arrest, search and seizure regardless of whether a defendant is subsequently charged with or convicted of a violation which amounts only to a misdemeanor."