# WILLIAM RICHARDSON *v.* STATE OF MARYLAND

[No. 344, September Term, 1971.]

*Decided February 16, 1972.*

The cause was argued before POWERS, CARTER and GILBERT, JJ.

*William H. Murphy, Jr.* for appellant.

*Josef E. Rosenblatt, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Milton B. Allen, State's Attorney for Baltimore City,* and *Sandra A. O'Connor, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

CARTER, J., delivered the opinion of the Court.

The appellant William Richardson was convicted by Judge James W. Murphy, sitting non-jury in the Criminal Court of Baltimore, of assault with intent to rape an 18-month-old baby girl and sentenced to 20 years in prison. He appeals from this judgment contending, 1) that the evidence was legally insufficient to justify his conviction, 2) that the court committed prejudicial error in admitting in evidence clothing illegally seized from his person, and 3) that he was denied due process by the failure of the State to produce his statements to police for his examination prior to trial.

I

The undisputed evidence relevant to the appellant's first contention shows that the incident occurred on April 1, 1970, at the second-third floor apartment occupied jointly by Diane Wright and Louise Mitchell, located at 1518 East Preston Street in Baltimore City. Diane Wright occupied the third floor with her 18-month-old baby girl Tracey, and Louise Mitchell occupied the second floor with her boy friend William Richardson, the appellant.

Mrs. Mitchell's two children Denise, 9 years old, and Yolanda, 7 years old, had a separate bedroom on the third floor. On the morning of April 1, Diane Wright left for work at 6:45 at which time Tracey was sleeping and in normal condition. On this morning, Mrs. Mitchell had advised the appellant she was not feeling well; wherefore, when the City Sanitation crew, with which he worked, was in the neighborhood of the apartment, he stopped to see her about 9:30. At this time he delivered the children's new Easter pants to Denise in her bedroom on the third floor, in compliance with a previous request by Mrs. Mitchell.

Denise testified that when the appellant brought her pants to her, she and her sister were in their bedroom which was directly across from Tracey's bedroom. After the appellant had delivered the pants, he entered Tracey's bedroom and closed the door. She further testified that after ("I think after") the appellant had entered Tracey's bedroom, she heard Tracey crying but was afraid to enter for fear the appellant would beat her. When the appellant had left Tracey's bedroom, Tracey, crying and with blood inside and outside her diapers, came into Denise's bedroom. Denise then took Tracey downstairs to Denise's mother who was with the appellant. The appellant held Tracey on his lap for a short time. At her mother's direction Denise then washed Tracey and put fresh diapers on her. Thereafter, Tracey fell asleep and was taken upstairs to her bedroom by Denise. Tracey continued to sleep until her babysitter Mrs. Moore took her to her home about 3:30 p.m. and afterwards to the hospital.

Mrs. Mitchell stated that after the appellant had entered her bedroom and awakened her about 9:30 a.m., he had gone to the store. After he returned, Denise brought Tracey who was crying into Mrs. Mitchell's bedroom. She agreed with Denise's testimony concerning what had occurred after Denise brought Tracey into her bedroom. Mrs. Mitchell further stated that she and the

appellant had had sexual intercourse on the night of March 30.

Dr. Herbert Nasdore, an obstetrician and gynecologist, testified that he was employed by the Baltimore City Police Department. He was called to Johns Hopkins Hospital at approximately 9:30 p.m. on April 1 to examine Tracey Wright. When he arrived, Tracey was in the operating room awaiting surgery. His examination revealed a tear from the posterior of her vagina to her anal opening, approximately 1½ inches long and 1½ inches deep. He testified that the tear was caused by some blunt instrument having been applied against that portion of the child's body where the tear existed and that the injury could have been inflicted by an erect male penis. He further stated that while it was possible for an injury of this type to be self-inflicted by a child falling on a toy or some blunt-type object, such was not a likely cause in this instance because there was no bruised area surrounding the tear. He further stated that the tear could not have been caused by masturbation because it was too extensive to have been caused by a child of this age. He estimated the time of the injury at about 3:00-3:30 p.m. on April 1; however, he qualified this estimate by stating that it was "a very gross estimate because there is no way we can determine when a wound occurred, when it stopped bleeding." He further stated that his opinion was based on the appearance of the wound when he made his examination at 9:30 p.m. He admitted he had no history of the physical activity of the child or the extent of attention to the tear between 9:30 a.m. and the time when she had arrived at the hospital about 5:30 p.m. In respect to whether activity of an injured person would affect the appearance of a wound, he testified, "I think so. Like anything else, if you have a cut and you bump it or push it or move, it starts bleeding again."

Lieutenant Eppel of the Crime Laboratory testified that his chemical analysis of the trousers taken from the appellant showed human bloodstains of type "O" blood (Tracey's blood was type "O") 1½ to 2 inches in size

located on the inside of the upper thigh area. He further testified the undershorts taken from the appellant showed male sperm stains on the fly area which could have been placed there several days prior to April 1. He further stated that the stains on Tracey's bedsheet had been caused by human blood and that the bloodstains on the appellant's trousers had worked their way from the outside toward the inside.

The appellant testified that when he had taken Mrs. Mitchell's children's pants to them about 9:30 a.m. on April 1, he had remained on the third floor for 3 or 4 minutes and that he had not entered Tracey's bedroom nor had any contact with her on that occasion. He further stated that after Denise brought Tracey downstairs, he had held Tracey on his lap for a short time.

The test for the legal sufficiency of the evidence to warrant a conviction is well settled. In *Williams v. State,* 5 Md. App. 450, 459, we held that the test to be applied was whether the evidence either shows directly or supports a rational inference of the facts to be proved, from which the trier of fact could fairly be convinced beyond a reasonable doubt of the defendant's guilt of the offense charged. See also *Smith & Samuels v. State,* 6 Md. App. 59, 81; *Bailey v. State,* 6 Md. App. 496, 510. In speaking of the application of this test to circumstantial evidence, we said in *Metz v. State,* 9 Md. App. 15 at 23:

> "* * * In short, we feel that the test for sufficiency is the same whether the evidence be direct, circumstantial, or provided by rational inferences therefrom."

Applying the rule enunciated in *Williams, supra,* and *Metz, supra* to the evidence in its totality, we conclude that Judge Murphy as trier of the fact was not clearly in error in finding beyond a reasonable doubt that the appellant had committed an assault upon 18-month-old Tracey Wright with intent to rape her.

## II

The appellant's second contention is that there was insufficient probable cause to justify his warrantless arrest and therefore that the seizure of his clothing incident to his arrest was unlawful and its admission in evidence constituted prejudicial error.

The evidence relative to the issue of probable cause to arrest the appellant consisted of the testimony of Officer Dix. He testified that on the evening of April 1 he had been officially requested to assist in the investigation of a report that Tracey Wright had been sexually assaulted. Officer Dix further stated that prior to the appellant's arrest, he had interviewed witnesses, including the appellant, who were at the apartment. During these interviews, Mrs. Mitchell, Diane Wright, and Mrs. Moore had informed him, 1) that they had been present at the apartment where the injury had occurred during the day of April 1, 2) that the injury to the baby had been discovered by Denise on the third floor, 3) that the baby had been brought downstairs and her bloody diapers removed, 4) that the appellant was the only male who had had access to the apartment, 5) that the appellant had been at the apartment during the day of April 1, and 6) that the appellant had not handled the baby after she had been injured. He further stated that during his interview with the appellant, he had observed that the appellant appeared nervous, that while the appellant had been seated, he had covered the area inside the upper portion of his thighs with his hands, and that when the appellant had stood-up, he had observed a stain on the appellant's trousers in the area he had covered with his hands. The stain had a "dark-red, brown, black" color which had indicated to him it was dried blood. Prior to the appellant's interview, Officer Dix had personal knowledge that the victim had bled profusely as a result of the sexual assault.

After receiving this information and making these observations, Officer Dix had placed the appellant under

arrest at about 2:20 a.m. on April 2. Promptly thereafter he had seized the appellant's trousers and his undershorts, which also contained stains, as probable evidence of the alleged sexual assault.

In discussing the sufficiency of probable cause for a warrantless arrest for felony generally and in particular where the probable cause consists of information furnished the police by a disclosed informer, this Court speaking through Chief Judge Murphy said in *Bauckman v. State,* 9 Md. App. 612 at 620-621:

"It is, of course, the function of the trial court to determine for itself the persuasiveness of the facts relied upon by the police to establish probable cause for a warrantless felony arrest. *Beck v. Ohio,* 379 U. S. 89; *Edwardsen v. State,* 231 Md. 332; *Bolesta v. State,* 9 Md. App. 408. Only the probability and not a *prima facie* showing of criminal activity is the standard of probable cause. *Spinelli v. United States,* 391 U. S. 933; *Cornish v. State,* 6 Md. App. 167. Whether a warrantless felony arrest is constitutionally valid necessarily turns upon whether, at the moment the arrest was made, the police had probable cause to make it, *i.e.,* whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the accused had committed or was committing a felony. *McCray v. Illinois,* 386 U. S. 300; *Draper v. United States,* 358 U. S. 307; *Farrow v. State,* 233 Md. 526; *Simms v. State,* 4 Md. App. 160. And where, as here, the arrest is initiated on hearsay information received from an informant, the State to establish its legality where challenged should sufficiently inform the trial judge of some of the underlying circumstances * * * from which the police concluded that the

informant was credible or his information reliable. *Spinelli v. United States, supra; Oberlin v. State, supra* [9 Md. App. 426]; *Mullaney v. State,* 5 Md. App. 248.

"* * * the key consideration was whether the police could, under all the circumstances, reasonably believe that his information concerning this particular transaction was credible. * * *"

See also *Oberlin v. State,* 9 Md. App. 426, 430; Md. Code, Art. 27, Section 594B (c).

Officer Dix, as the arresting officer, obviously believed that the information furnished him by the three persons present at the apartment was credible as evidenced by the fact that he included it in his statement to the court of his reasons for arresting the appellant. The underlying circumstances which supported the officer's belief of trustworthiness were: 1) the statements were made by witnesses who were present at the scene of the crime either at the time it was committed or within a short time thereof and were given to the police within a few hours after the incident,[1] 2) the arresting officer as a participant in interviews with these witnesses at the police station had full opportunity to observe their reactions and demeanor in response to police questioning, 3) the statements were confined to observations of the witnesses rather than expressions of their conclusions, and 4) the statements were given in response to a request from the police rather than the witnesses seeking out the police. We hold that these underlying circumstances were legally sufficient to justify the trial court in finding that the arresting officer as a prudent person

---

1. *Cf. Knight v. State,* 7 Md. App. 282, 285, where we held that the standards of reliability of information furnished by an eyewitness to a crime given to the police at the scene of the crime within minutes after it occurred were not the same as when the information was otherwise received from an informer. In *Taylor v. State,* 238 Md. 424, 430, the Court of Appeals held it would be entirely impractical and unrealistic to require the officer to stop his investigation of the crime and inquire into the eyewitness's trustworthiness under the circumstances of that case.

could reasonably believe that the statements of these witnesses were credible and reasonably trustworthy.

We conclude that the reasonably trustworthy information known to the arresting officer at the time of the appellant's arrest together with the information he had acquired as a result of his own personal knowledge were legally sufficient to warrant a reasonably prudent person in believing that a felony had been committed by the appellant. We therefore hold that the warrantless arrest was lawful, (*Sands v. State,* 9 Md. App. 71, 76) and that the seizure of the appellant's clothing incident thereto was likewise lawful. (*Denikos v. State,* 9 Md. App. 603, 605.) We further conclude there was no error in the trial court's ruling which admitted the appellant's clothing in evidence over his objection.

### III

The evidence relative to the appellant's third contention showed that there were three statements made by the appellant as a result of his interviews with the police: 1) a verbal statement made at 11:45 p.m. on April 1 which was evidenced by a written memorandum made by the police; 2) a written statement signed by the appellant as the result of an interrogation at 12:40 a.m. on April 2; and 3) an oral statement resulting from an interrogation at 10:00 a.m. on April 2 which was reduced to writing but was not signed by the appellant. The court granted the appellant's motion to suppress all these statements on the basis that the warnings required by *Miranda v. Arizona,* 384 U. S. 436 had not been properly given to the appellant. Prior to trial, defense counsel had filed a written motion under Md. Rule 728 requesting the State to furnish him with copies of all written statements signed by the appellant and the substance of all oral statements made by him to police officers. The State replied, that to its knowledge, it had none. During the course of the trial, it was discovered that the prosecutor had been given the signed statement on the day of trial

but was not intending to use it as evidence at the trial and that she had no prior knowledge of the existence of the signed statement or any other statements of the appellant. At that time the prosecutor gave the signed statement to defense counsel and agreed to a continuance if defense counsel so desired after he examined it. After defense counsel's examination, he made no request for a continuance nor any other objection concerning the signed statement or any of the other statements. Neither party introduced any of the statements in evidence. There was no indication in the record of the contents of any of the statements.

The appellant contends he was denied due process because of the failure of the State to produce his statements for his inspection prior to trial. This Court dealt with a situation similar to this contention in *Chesley v. State,* 3 Md. App. 588. In that case the appellant contended that after his trial was concluded, he discovered that the State had made a laboratory examination of his pants which had shown they were free of sperm. He claimed this fact was material to the issue of his guilt on a rape charge and that it had been knowingly withheld from him by the State. In dismissing his contention, we said at 597:

> "The record before us is silent as to the examination of the pants. It does not show if, in fact, such an examination was made, or, assuming it was made, what it disclosed or whether the appellant had knowledge of it prior to trial or could reasonably have learned of it. The contention is not available to the appellant on direct appeal, as on the state of the record there is nothing for this court to review. Not being tried and decided by the lower court, the point is not properly before us. Md. Rule 1085."

In the instant case the evidence fails to show whether the information contained in the demanded statements was admissible or useful in the appellant's defense,

whether it was material to the issue of guilt, or whether it would have substantially affected the matter of punishment.[2]

Applying the rationale of *Chesley v. State, supra,* to the instant case, we hold that the appellant's contention that he was denied due process because the State had suppressed statements which he had previously given to the police is not available to him on his direct appeal in this case. His contention was neither presented to nor decided by the trial court, and therefore it is not properly before this Court for review. Md. Rule 1085.

*Judgment affirmed.*

---

2. For a discussion of the rule of law applicable to suppression of the evidence when properly raised, see cases cited in footnote 9 of Judge Orth's opinion in *Chesley v. State, supra* at 597.