STATE of Minnesota, Plaintiff,

v.

Jay M. CORBIN and Ronald R. Niebuhr, Defendants.

No. C6–83–1538.

Court of Appeals of Minnesota.

Feb. 8, 1984.

Hubert H. Humphrey, III, Atty. Gen., Arvid Wendland, Faribault County Atty., Robert L. Hammond, Jr., Asst. Faribault County Atty., Blue Earth, for plaintiff.

Brian D. Roverud, Blue Earth, for defendants.

Considered and decided by PARKER, P.J., and WOZNIAK and LANSING, JJ., with oral argument waived.

## OPINION

LANSING, Judge.

This is a case of first impression, construing the 1979 amendment to Minn.Stat. § 100.273, subd. 7 (1982) allowing a hunter to trespass on unposted agricultural land to retrieve a wounded animal without permission of the landowner. The State brought this appeal, pursuant to Rule 28.04, subd. 1, Minn.R.Crim.P., following a pretrial order by the trial court that it would instruct the jury that Minn.Stat. § 100.273, subd. 7, provided a defense in a misdemeanor trespass complaint. We affirm.

The facts, as stipulated, are as follows. On November 6, 1982, Jay Corbin, Ronald Niebuhr and other members of their hunting party requested permission to hunt at the Soost farms. Wayne and Ed Soost told the hunters they could hunt in the woods but could not go "through the standing corn." The next day, the hunters returned and asked if they could get a wounded deer out of the corn field. Ed Soost refused to allow the retrieval of the deer until he got his corn picked. Later, Soost became suspicious and went to his corn field "to see what the Sam Hill was down on the other end of the field." Soost learned that Corbin and Niebuhr had entered the corn field to retrieve the wounded deer. The corn field was part of the Soost property that was not posted with "no trespassing" signs.

The Faribault County Sheriff's Office was contacted and Corbin and Niebuhr were charged with trespassing. At a pretrial conference, the trial court judge indicated that, contrary to an earlier omnibus hearing ruling, he would instruct the jury that Minn.Stat. § 100.273, subd. 7, provided a defense to the trespassing charge. He issued an order to that effect on September 28, 1983. The State appealed from this pretrial order.

The sole issue on appeal is whether a hunter commits a trespass prohibited under Minn.Stat. § 100.273, subd. 3, by retrieving a wounded deer from unposted agricultural land after being told not to do so by the landowner.[1]

> Minn.Stat. § 100.273, subd. 3, provides:
> No person shall enter upon any land not his own regardless if it is agricultural land with intent to take any wild animals after being notified not to do so, either orally by the owner, occupant or lessee, or by signs erected pursuant to subdivision 6.

This section, which applies both to agricultural and nonagricultural land, became ef-

fective in 1978. *See Laws of Minnesota 1978*, Chapter 794, Section 2.

In 1979, the legislature made a number of changes to Minn.Stat. § 100.273. One of these changes, incorporated in subdivision 2, requires affirmative permission to hunt on agricultural land. This subdivision reads, in part:

> No person shall enter upon the agricultural lands of another with the intent of hunting big or small game * * * unless and until the permission of the owner, occupant, or lessee is obtained.

*See Laws of Minnesota 1979*, Chapter 291, Section 4.

As part of the same legislative act, subdivision 7 was amended to create a limited exception for entry without permission to retrieve a wounded animal from agricultural lands that are not posted:

> During the season for taking big or small game, a hunter may on foot retrieve a wounded big or small game animal from agricultural land of another which is not posted pursuant to subdivision 6, without permission of the landowner, and shall then leave as soon as possible.

*See Laws of Minnesota 1979*, Chapter 291, Section 4.

Corbin and Niebuhr obtained the initial permission necessary to enter upon Soost's land to hunt deer. Whether their subsequent entry into the cornfield to retrieve the wounded deer constituted a trespass depends upon the interpretation of subdivision 7. This subdivision allows hunters to trespass in certain instances to retrieve a wounded animal *without permission* of the landowner. The State would interpret "without permission" to mean "without having received a refusal." The defendants, on the other hand, maintain that "without permission" allows entry even after a refusal has been received.

In construing the statute, we are aided by several principles. First, penal

---

1. Minn.Stat. § 100.273, subd. 9, makes any violation of § 100.273 a misdemeanor; moreover, upon conviction a person's hunting license becomes null and void.

statutes must be construed strictly; any reasonable doubt must be interpreted in favor of the defendant. *State v. Olson*, 325 N.W.2d 13, 19 (Minn.1982); *State v. Haas*, 280 Minn. 197, 200, 159 N.W.2d 118, 121 (1968). Second, specific provisions of an act prevail over prior, general provisions. Minn.Stat. § 645.26, subd. 1 (1982); *Fink v. Cold Spring Granite Co.*, 262 Minn. 393, 399, 115 N.W.2d 22, 26 (1962). Finally, we "cannot supply that which the legislature purposely omits or inadvertently overlooks." *Northland Country Club v. Commissioner of Taxation*, 308 Minn. 265, 271, 241 N.W.2d 806, 809 (1976), quoting *Wallace v. Commissioner of Taxation*, 289 Minn. 220, 184 N.W.2d 588 (1971).

■■■ In light of the misdemeanor penalty for violating subdivision 3, this statute is penal in nature. Second, subdivision 7 was enacted after subdivision 3 and is the more specific subdivision because it regulates a narrower range of activity. Finally, a plain reading of the entire statute suggests a purposeful omission of the construction urged by the State. The parallel subdivisions create gradations of protection and categories of notice, including written permission, oral permission, oral notice, and notice by posting signs. *See* Minn. Stat. § 100.273, subds. 2, 3, 5, 6. Subdivision 3 specifically provides two methods for a property owner to warn a hunter about trespassing—signs and oral notice. Subdivision 7, which is the subdivision at issue, includes only one method of notice: posting. Therefore, the inference exists that the legislature purposely omitted an oral notice provision in subdivision 7.

We note that this interpretation allows limited entry on unposted *agricultural* land to retrieve a wounded animal after an oral notice not to do so, but would prohibit a similar entry on unposted *nonagricultural* land. Because the statute generally defines a more protected status for agricultural lands, an anomaly is created.

The legislature may desire to address this by (a) requiring affirmative permission to enter agricultural land regardless of the presence of a wounded animal, or (b) placing greater weight on the refusal of permission to enter agricultural land, or (c) providing an additional limited exception for hunters to enter nonagricultural land to retrieve wounded animals. Until it does so, we believe that statutory construction requires the interpretation given by the trial court. If a landowner wishes to avoid this temporary intrusion on agricultural land, the owner should post the land, pursuant to Minn.Stat. § 100.273, subd. 6.

The defendants' request for attorney's fees under Rule 28.04, subd. 2, (6), Minn.R. Crim.P., is granted, in the amount of $300, together with costs.

Affirmed.