STATE of Minnesota, Respondent,

v.

Roger Reidel LEWIS, Appellant.

No. C1–86–280.

Court of Appeals of Minnesota.

Oct. 7, 1986.

Review Denied Dec. 12, 1986.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Robert F. Carolan, Dakota Co. Atty., Charles A. Diemer, Dakota County Government Center, Hastings, for respondent.

Robert G. Davis, Steffenson & Davis, Minneapolis, for appellant.

Heard, considered and decided by POPOVICH, C.J., and SEDGWICK and NIERENGARTEN, JJ.

## OPINION

NIERENGARTEN, Judge.

Appellant Roger Riedel Lewis was convicted for unlawful possession of a Schedule II controlled substance. On appeal, he contends that mere presence of morphine within a person's body does not constitute "possession" within the meaning of Minn. Stat. § 152.09, subd. 1(2). We reverse.

## FACTS

On January 23, 1984, Lewis sustained injuries in an automobile accident and was taken to the hospital. At the hospital the investigating police officer invoked the implied consent law and Lewis consented to give a urine specimen, which, upon analysis, revealed traces of morphine.

On the basis of the laboratory report, a complaint was issued charging Lewis with unlawful possession of a Schedule II controlled substance in violation of Minn.Stat. § 152.09, subd. 1(2). The case was tried without jury on stipulated facts and on the basis of the laboratory results from the urine sample. The only other evidence was the investigating officer's statement in the complaint that he observed what he believed were "needle marks on the inside elbow of both of Mr. Lewis' arms."

The trial court found Lewis guilty of unlawful possession of a Schedule II controlled substance on the grounds that "the presence of a controlled substance in the bloodstream is within the meaning of the Minnesota Statute the quintessential act of possession." Lewis appeals.

## ISSUE

Is the presence of a trace of morphine within a person's system, without more evidence, sufficient to sustain a conviction for unlawful possession of a controlled substance under Minn.Stat. § 152.09, subd. 1(2) (1984)?

## ANALYSIS

Lewis was charged and convicted of unlawful possession of morphine, a Schedule II controlled substance. Minnesota Statutes Chapter 152 provides:

> Except as otherwise provided in this chapter, it shall be unlawful for any person, firm or corporation to
>
>    *     *     *     *     *     *
>
> (2) Possess a controlled substance, except when the possession is for his own use and is authorized by law.

Minn.Stat. § 152.09, subd. 1(2) (1984).

### *"Possession"*

The term "possession" is not defined in section 152.09 or in any other provision of Chapter 152. The Minnesota Supreme Court has stated:

> [I]n order to convict a defendant of unlawful possession of a controlled substance, the state must prove that defendant consciously possessed, either physically or constructively, the substance and that defendant had actual knowledge of the nature of the substance.

*State v. Florine*, 303 Minn. 103, 104, 226 N.W.2d 609, 610 (1975) (citing LaFave & Scott, *Criminal Law* § 25, at 182). The defendant's conviction in *Florine* was based on constructive possession. Although the defendant did not physically possess the substance at the time of his arrest, physical evidence found in an unlocked abandoned car was sufficient to show that the defendant "physically possessed" the substance at one time, that he had not abandoned his "possessory interest" in the substance, and that he "continued to exercise dominion and control over it up to the time of the arrest." *Id.* at 104–05, 226 N.W.2d at 610. Since the defendant in *Florine* did not actually possess the substance, the State first had to prove that the defendant "consciously" exercised "dominion and control" over the substance because, as the court stated, "if defendant consciously possessed the substance, either constructively or physically, then the judge could easily infer from that and from the nature of the substance that defendant had knowledge of the substance's nature." *Id.* at 104, 226 N.W.2d at 610.

Other cases have defined "possession" in terms of actual physical possession or the exercise of "dominion and control" over a controlled substance. In *State v. Hornaday*, 105 Wash.2d 120, 713 P.2d 71 (1986), the Washington Supreme Court stated that a defendant could not be convicted for possession of alcohol merely because the defendant had alcohol within his system because "[o]nce it is within a person's system, the power of a person to control, possess, use or dispose of it is at an end." 713 P.2d at 75. According to the Washington court, "[a] defendant 'possesses' a controlled substance when the defendant knows of the substance's presence, the substance is immediately accessible, and the defendant exercises 'dominion or control' over the substance." *Id.* at 74. *See also Nethercutt v. Commonwealth*, 241 Ky. 47, 43 S.W.2d 330

(1931) (alcohol consumed and in the stomach does not constitute "possession" within the meaning of a statute prohibiting unlawful possession of intoxicating liquor); *United States v. Philips*, 496 F.2d 1395, 1397 (5th Cir.), *reh'g denied*, 503 F.2d 1403 (5th Cir.1974), *cert. denied*, 422 U.S. 1056, 95 S.Ct. 2680, 45 L.Ed.2d 709 *reh'g denied*, 423 U.S. 885, 96 S.Ct. 160, 46 L.Ed.2d 116 (1975) ("possession may be actual or constructive but in any event there must be dominion or control over the item or a power to exercise dominion and control").[1]

Lewis argues that once a controlled substance is consumed the substance no longer is in anyone's possession because conscious control and dominion over that substance ceases. He cites *State v. Flinchpaugh*, 232 Kan. 831, 659 P.2d 208 (1983), in support of his argument. The facts in *Flinchpaugh* are nearly identical to this case. Janet Flinchpaugh was involved in an automobile accident. She was taken to a hospital where she consented to a blood sample. Subsequent analysis of the sample revealed traces of a metabolite which could not have been in the blood unless cocaine had first been present. Flinchpaugh was charged with possession of a controlled substance. The charge was based solely on the results of the blood test; the State had no direct evidence showing how or when the substance was introduced into her system.

The Kansas Supreme Court sustained the trial court's dismissal, rejecting the State's arguments that presence of a controlled substance in the bloodstream constitutes possession within the meaning of the State's controlled substance act, or is otherwise sufficient circumstantial evidence to prove possession before introduction of the substance into the person's system. The Kansas court stated:

> Once a controlled substance is within a person's system, the power of the person to control, possess, use, dispose of, or

cause harm is at an end. The drug is assimilated by the body. The ability to control the drug is beyond human capabilities. The essential element of control is absent. Evidence of a controlled substance after it is assimilated in a person's blood does not establish possession or control of that substance.

*Flinchpaugh*, 659 P.2d at 211.

The Kansas Supreme Court also stated that "knowledgeable possession" must be proved.

> Discovery of a drug in a person's blood is circumstantial evidence tending to prove prior possession of the drug, but it is not sufficient evidence to establish guilt beyond a reasonable doubt.

*Id.* at 212. The Kansas court distinguished three cases from other jurisdictions which upheld convictions for possession or use of drugs based on testing and additional direct evidence. *Franklin v. State*, 8 Md. App. 134, 258 A.2d 767 (1969), *cert. denied*, 257 Md. 733 (1970) (obvious physical symptoms and defendant's admission to an attending physician that he had overdosed on an intravenous injection of heroin were sufficient evidence to support a conviction for heroin possession); *State v. Yanez*, 89 N.M. 397, 553 P.2d 252 (Ct.App.1976) (conviction was based on an analysis of a urine sample showing presence of morphine, police surveillance of the defendant making a probable drug deal and subsequently purchasing hypodermic needles, discovery of a used hypodermic needle in the filling station restroom where the defendant was arrested, and fresh needle marks on the defendant's arm); *State v. Downes*, 31 Or. App. 1183, 572 P.2d 1328 (1977) (undercover agent's observation of an injection of a controlled substance into the defendant by a third person may be sufficient evidence to show violation of "use" statute, but not possession under separate statute for "pos-

---

1. The term "possess" within the context of narcotic drug laws "means actual control, care and management of the drug." Black's Law Dictionary 1046 (5th ed.1979). The term "control" within the context of statutes prohibiting unlawful possession or control of narcotics "is given

its ordinary meaning, namely, to exercise restraining or directing influence over, and also has been defined to relate to authority over what is not in one's physical possession." *Id.* at 298.

session of dangerous drugs"). *See also Anderson v. State,* 9 Md.App. 639, 267 A.2d 302 (1970) (conviction for possession of narcotic paraphernalia and control of heroin upheld when evidence showed that defendant had recent needle marks as well as general access and control of premises containing paraphernalia and drugs).

The State argues that conscious, physical possession of a controlled substance necessarily includes ingestion, injection or any other means of administration. The State contends that Lewis' argument and the position taken by the *Flinchpaugh* court unduly restricts the term "possession" to include only manual control. The State maintains that the term "possession" also requires consideration of whether the defendant exercised exclusive control over the substance and that in this case the presence of morphine within Lewis' system means Lewis was associated with the controlled substance to the exclusion of all others. Consequently, the morphine found in his urine places that substance firmly within his control and possession at the time of his arrest. The supreme court stated in the *Florine* case that

> the question of whether there was sufficient evidence of guilt centers on the first part of the state's proof—i.e., whether there was proof of conscious possession of the substance—because if defendant consciously possessed the substance, either constructively or physically, then the judge could easily infer from that and from the nature of the substance that defendant had knowledge of the substance's nature.

303 Minn. at 104, 226 N.W.2d at 610. The *Florine* case involved physical evidence showing constructive possession. The State has offered no evidence in this case to prove Lewis' "conscious possession of the substance" other than mere presence in his system; it has not offered proof to show where, how, when, or under what circumstances the controlled substance was introduced into Lewis' body. The morphine could have been introduced by trick or guile, or injected involuntarily. *See Flinchpaugh,* 659 P.2d at 212.

The State cites two cases to support its argument that the term "possession" is not restricted to manual control. *United States v. Montoya de Hernandez,* 731 F.2d 1369 (9th Cir.1984), *rev'd,* —— U.S. ——, 105 S.Ct. 3304, 87 L.Ed.2d 381 (1985) and *United States v. Quintero-Castro,* 705 F.2d 1099 (9th Cir.1983). Both cases were smuggling cases involving drugs concealed in balloons placed in the smugglers' alimentary canals. Both defendants were arrested while the balloons were still within their bodies. Although the convictions in those cases were reversed on search and seizure issues, neither of the defendants challenged the charges based on possession. Neither decision is applicable under the facts of this case. The drugs in those cases obviously were not readily accessible and were within the defendant's bodies, however, the defendants intended and did retain the potential to exercise dominion and control over the substances. Cocaine packaged and concealed in the alimentary canal is retrievable. Morphine consumed and broken down into metabolites in urine is not. "Obviously, after a drug is ingested or injected into the human body, the host body can no longer exercise dominion or control over it." *Downes,* 572 P.2d at 1330.

*Statutory Interpretation*

In *Flinchpaugh,* the Kansas Supreme Court noted that the purpose of the Uniform Controlled Substances Act, which is similar to the relevant Kansas statutes, is to regulate drug traffic. Consequently, punishment for ingestion of a controlled substance into a person's body is beyond the regulatory objectives of the act. The court stated:

> Once a controlled substance is in the human system it is beyond the control which the uniform act contemplated. The deleterious effects of the drug are already in progress. What the act seeks to prevent has occurred. The "controlled substance" is no longer susceptible to the control the act seeks to regulate. Without proof of a person's knowledge-

able prior possession of the drug, punishment for presence of the drug in a person's system is not consistent with the design of the Uniform Controlled Substances Act.

659 P.2d at 213. Other courts also have concluded that presence of a regulated substance within a person's system is not "possession" within the meaning of the applicable regulatory statute. *See, e.g., State v. Hornaday,* 105 Wash.2d 120, 713 P.2d 71 (1986) ("The term 'possession' of liquor should not be interpreted to include liquor which is in the body."); *State v. Reed,* 34 N.J. 554, 170 A.2d 419 (1961) (in analyzing a state statute prohibiting possession of drugs the court indicated that the existence of an ingested narcotic within a person's blood or respiratory system is not constructive possession.); *Denikos v. State,* 9 Md. App. 603, 266 A.2d 354 (1970) (evidence showing that a person has a prohibited drug within the person's system does not per se constitute possession or control, but tends to show circumstantially that the person was in possession of the drug prior to taking it).

The general policy underlying Minn.Stat. § 152.09 may encompass the use of controlled substances, however, the principles of statutory construction constrain this court from interpreting the term "possession" to include mere presence of morphine within a person's body. In *State v. Haas,* 280 Minn. 197, 159 N.W.2d 118 (1968), the Minnesota Supreme Court dealt with the interpretation of the term "writing" within the meaning of a state statute prohibiting persons from depositing in post offices within the state "any obscene book, magazine, pamphlet, paper, writing, * * * or other article which is obscene." The court concluded that the statute was not "intended to prohibit the conveyance by mail of a private, sealed, obscene letter between consenting adult parties." *Id.* at 198, 200, 159 N.W.2d at 119, 121. The court stated:

> [W]e reach the conclusion that even though the offense charged might fall within the apparent policy of the statute, it was not intended to be included. Any other interpretation would give too broad

a meaning to the common and approved usage of the word "writing"; would not resolve all reasonable doubts concerning legislative intent in favor of the defendant as required by the rule of strict construction applicable to penal statutes; and, in effect, would create a criminal offense not contemplated by the legislature.

*Id.* at 200–01, 159 N.W.2d at 121 (citations omitted). *See also Commonwealth v. Perry,* 391 Mass. 808, 464 N.E.2d 389 (1984) (a physician who prescribed drugs solely for his own use could not be convicted under a statute making it unlawful to "dispense" and "distribute" certain controlled substances because a person could not be both a transferor and a transferee in one transaction).

█ In an early case the Minnesota Supreme Court stated the basic principles for the construction of penal statutes.

> A statute is not to be deemed to make an act criminal, which would not have been so except for the statute, unless the intention of the legislature to effect that result is apparent, and not seriously doubtful; and if, applying the proper principles of construction to ascertain the intention of the legislature expressed in the law, it remains fairly doubtful whether it was intended to embrace acts or conduct like that under consideration, such acts or conduct must be regarded as not within the statute.

*State v. Walsh,* 43 Minn. 444, 445, 45 N.W. 721, 721 (1890). This court recently stated that "penal statutes must be construed strictly; any reasonable doubt must be interpreted in favor of the defendant." *State v. Corbin,* 343 N.W.2d 874, 875–76 (Minn.Ct.App.1984) (citing *State v. Haas,* 280 Minn. 197, 200, 159 N.W.2d 118, 121 (1968)). This principle of statutory construction has special application with respect to felony statutes.

█ The statute under which appellant Lewis was convicted makes it unlawful for any person to "[m]anufacture, sell, give away, barter, deliver, exchange or distrib-

ute; or possess with intent to manufacture, sell, give away, barter, deliver, exchange or distribute, a controlled substance." Minn. Stat. § 152.09, subd. 1(1) (1984). We must give effect to the "plain meaning" of the words of the statute, *Pacific Indemnity Co. v. Thompson-Yeager, Inc.*, 260 N.W.2d 548, 554 (Minn.1977), and construe the words "according to their common and approved usage." Minn.Stat. § 645.08(1) (1984). We also are mindful of the rule that "[g]eneral words are construed to be restricted in their meaning by preceding particular words." *Id.* § 645.08(3). We adopt a "common-sense interpretation" of the term "possession." *Pacific Indemnity Co.*, 260 N.W.2d at 554. The usual and ordinary meaning of the term "possession" does not include substances injected into the body and assimilated into the system.[2] After a controlled substance is within a person's system the power to exercise dominion and control necessary to establish possession no longer exists. Moreover, the particular terms of the statute suggest a legislative intent to regulate the physical movement and transfer of controlled substances between different persons. Consequently, once a controlled substance is within a person's system the substance is beyond the scope of regulation contemplated by the statute.

We cannot interpret the term "possession" to encompass mere presence of morphine within the body because the plain meaning of possession does not include that interpretation. At a minimum, we must construe this penal statute in favor of Lewis when "the intention of the legislature expressed in law, * * * remains fairly doubtful." *State v. Walsh*, 43 Minn. at 445, 45 N.W. at 721. We must resolve reasonable doubt in favor of Lewis.

Our holding in this case is narrow. We find that evidence of a controlled substance in a person's urine specimen does not establish possession within the meaning of Minn.Stat. § 152.09, subd. 1(2),

nor is it sufficient circumstantial evidence to prove prior possession beyond a reasonable doubt absent probative corroborating evidence of actual physical possession.

## DECISION

The appellant's conviction for unlawful possession of morphine is reversed because mere presence of the controlled substance in his urine sample does not establish "possession" within the meaning of Minn.Stat. § 152.09, subd. 1(2). Without probative corroborating evidence the mere presence of morphine in Lewis' system is not sufficient circumstantial evidence to prove prior unlawful possession of a controlled substance in this state.

Reversed.

---

**2.** The term "possess" has been defined as follows: "To have and hold as property; to have a just right to; to be master of; to own; as to possess lands, money, a horse, a watch." Webster's New International Dictionary of the English Language 1926 (2d ed.1951).