STATE of Minnesota, Respondent,

v.

Richard Alan HOELZEL,
Petitioner, Appellant.

No. C8–00–851.

Supreme Court of Minnesota.

Feb. 14, 2002.

John M. Stuart, Minnesota State Public Defender, Michael F. Cromett, Assistant State Public Defender, Minneapolis, for Appellant.

Michael A. Hatch, State Attorney General, St. Paul, Amy Klobuchar, Hennepin County Attorney, Mary M. Lynch, Assistant County Attorney, Minneapolis, for Respondent.

## OPINION

PAUL H. ANDERSON, Justice.

After a bench trial in Hennepin Count District Court, appellant Richard Alan Hoelzel was found guilty of a felony for burglary in the first degree and a gross misdemeanor for interference with an emergency call. The court stayed imposition of sentence on the gross misdemeanor, but refused to take further action on the felony. The state appealed and the Minnesota Court of Appeals held that the district court's action was the functional equivalent of a stay of adjudication, and as such was improper under the circumstances. The court of appeals reversed and remanded for sentencing on the felony burglary. We reject the court of appeals' characterization of the district court's action as a stay of adjudication, construe the state's appeal to be a petition for a writ of mandamus, and conclude that the state is entitled to a writ compelling the district court to act. We affirm in part, reverse in part, and remand.

Richard Alan Hoelzel and Diana Dioquino were married in May 1986. They separated around February 1999, and Dioquino moved in with her brother in Corcoran, Minnesota, while Hoelzel stayed at the family home in Medina, Minnesota. On March 15, 1999, Dioquino obtained an order for harassment hearing and an ex parte temporary restraining order (TRO) ordering Hoelzel to have no contact with Dioquino either in person or by telephone. The TRO was in effect until a hearing which was held on March 29, 1999, at

which time both parties appeared and signed a stipulation continuing the hearing to October 4, 1999. The order continuing the hearing provided that the TRO remain in full force and effect. It also provided that "the parties may contact each other through attorneys" and that Dioquino "may contact" Hoelzel.

In June 1999, a default judgment and decree dissolving the marriage was entered. The decree granted Hoelzel temporary occupancy of the Medina home pending its sale. Service of the judgment and decree on Hoelzel could not be effectuated despite multiple attempts and the person attempting service concluded that Hoelzel was avoiding service of the judgment and decree. In July 1999, an ex parte order amending the judgment and decree was issued. The amended decree gave sole and exclusive possession of the Medina home to Dioquino, subject to Dioquino placing the home on the market for sale, with net proceeds being divided evenly between Dioquino and Hoelzel. Service of the order amending the judgment and decree was made on Hoelzel on July 28, 1999, along with correspondence demanding Hoelzel vacate the property by July 30, 1999. Hoelzel continued to remain in the Medina home until sometime in August 1999 when he was evicted by the sheriff. After Hoelzel's eviction, Dioquino took possession of the Medina home, but continued to reside with her brother in Corcoran.

On September 18, 1999, Dioquino was in the attached garage of the Medina home when Hoelzel walked up the driveway and into the garage. Dioquino told him that he could not be there, retreated into the home through the garage service door, and attempted to close the door behind her. Hoelzel prevented Dioquino from closing the door and pushed his way into the home by force.

Once inside the home, Hoelzel seated himself in the kitchen and began speaking about his relationship with Dioquino. Dioquino told Hoelzel to leave and, holding the portable phone receiver in her hand, said, "You don't want me to call the police, do you?" Hoelzel responded by unplugging the base unit of the portable phone. Hoelzel then left the home and sat in the backyard. At some point, Dioquino was able to call the police, and when the police arrived they arrested Hoelzel.

Hoelzel was charged with one count of first-degree burglary, a felony under Minn. Stat. § 609.582, subd. 1(a) (2000); one count of interference with an emergency call, a gross misdemeanor under Minn. Stat. § 609.78, subd. 2 (2000); and one count of violation of an order for protection, a misdemeanor under Minn.Stat. § 518B.01, subd. 14(a)(b) (2000). Hoelzel waived his right to a jury trial, and a bench trial was held. Over the course of the two-day trial, the court heard testimony from three witnesses: Dioquino, Hoelzel, and a former neighbor who was present at the Medina home on the date of the incident. The court found Hoelzel guilty of first-degree burglary and interference with an emergency call, but found him not guilty of violating an order for protection. Specifically, the court stated on the record that "burglary in the first degree has been proven beyond a reasonable doubt" and that Hoelzel "stands convicted of" burglary.

At sentencing, the judge who presided at the trial explained that he found Hoelzel guilty of first-degree burglary because the state satisfied the technical requirements of the law, but the judge questioned whether Hoelzel should be sentenced as a felon because of the circumstances in this case. While the judge was addressing these sentencing concerns, Hoelzel interrupted the judge, as he had done through-

out the proceedings. This time, however, the judge found Hoelzel in contempt and continued the sentencing to the next day. On the next day, the judge repeated his concerns about sentencing Hoelzel as a burglar, drawing distinctions between the facts of this case and more typical first-degree burglaries. The judge indicated that while he had to find Hoelzel guilty because the state satisfied its burden of proof from a technical perspective, he did not believe Hoelzel was a burglar. The judge also explained that a felony record for first-degree burglary indicated a level of violence or danger that simply was not present in this case.

After making the foregoing statements, the court announced that Hoelzel was going to be sentenced only for the gross misdemeanor—interference with an emergency call. The court then stayed imposition of that sentence and placed Hoelzel on two years' probation under specific terms and conditions. The court stated that it would not sentence for the burglary because it did not see Hoelzel as a burglar and the conditions of probation for the gross misdemeanor would appropriately restrict his behavior. The court also stated that it was not sentencing for the burglary "until and unless I have to address it by either a revocation or the Court of Appeals tells me I must." Following the hearing, the court entered a sentencing order on May 1, 2000.[1] The record does not contain an official judgment of conviction or order of conviction.

The state appealed the district court's treatment of the burglary. The court of appeals ordered briefing on whether the court had jurisdiction to hear the appeal.

The court of appeals ultimately accepted jurisdiction, concluding that the district court's action was the functional equivalent of a stay of adjudication, which is appealable by the state. *State v. Hoelzel,* 621 N.W.2d 44, 45–47 (Minn.App.2000). The court of appeals then concluded that the special circumstances required for a stay of adjudication were absent in this case and reversed and remanded for sentencing on the burglary count. Hoelzel appeals from this decision, arguing that the district court's action was not the functional equivalent of a stay of adjudication, but rather an appropriate exercise of sentencing discretion.

I.

The court of appeals characterized the district court's action on the felony burglary count as a stay of adjudication. This characterization is significant because the state may appeal from a stay of adjudication, but may not appeal from a sentence on a gross misdemeanor. *See* Minn. R.Crim. P. 28.04, subd. 1(2); *State v. Thoma,* 569 N.W.2d 205 (Minn.App.), *aff'd,* 571 N.W.2d 773 (Minn.1997). It is undisputed that the court did adjudicate the gross misdemeanor count of interference with an emergency call, but it is not clear what the court did with the felony burglary count. Therefore, the proper characterization of the court's action is a threshold issue in this appeal.

Even though both the state and court of appeals characterize the district court's action as the functional equivalent of a stay of adjudication, there is no support in the record for such a characterization. The district court did not state that it was

---

1. The order is somewhat confusing and states that "Count I, Lesser charge of Interference with an Emergency · Call (Misdemeanor), merged under 609.035." The original complaint and subsequent documentation all refer to Count I as the burglary count. There is also no reference in the record to the burglary count merging or being considered a lesser-included offense.

granting a stay of adjudication nor does the term "stay of adjudication" appear anywhere in the record. Rather, the court found Hoelzel guilty of first-degree burglary and stated on the record that "burglary in the first degree has been proven beyond a reasonable doubt" and that Hoelzel "stands convicted of" first-degree burglary.

 Unfortunately, it is not clear what the court meant or intended when it stated that Hoelzel "stands convicted." While court-accepted guilty pleas, jury verdicts of guilt, and findings of guilt by a court are often referred to as "convictions," [2] a formal adjudication of conviction requires more. For accepted pleas, verdicts, or findings of guilt to become convictions under Minnesota law, the conviction must be recorded. Minn.Stat. § 609.02, subd. 5 (2000) (requiring acceptance and *recording* of pleas, verdicts, or findings). The general practice, and a practice to which district courts should adhere, is to have the conviction recorded and appear in a judgment entered in the file. *See State v. Pflepsen*, 590 N.W.2d 759, 767 (Minn. 1999); *State v. LaTourelle*, 343 N.W.2d 277, 284 (Minn.1984). To facilitate appellate review, courts should follow the steps set forth in Minn. R.Crim. P. 27.03, subd. 7—that the clerk's record of a judgment of conviction include the plea, the verdict of findings, and the adjudication and sentence. A conviction appearing in the official judgment of conviction or in a conviction order entered by the court has been "formally adjudicated." *Pflepsen*, 590 N.W.2d at 767.

We conclude that the record lacks any clear indication that the district court intended to adjudicate Hoelzel's burglary offense. Although the court stated that Hoelzel "stands convicted," the court also stated that it did not intend to impose sentence unless Hoelzel's probation was revoked or until the court of appeals ordered it. Thus, it appears that the court was attempting to defer the imposition of sentence for the burglary. This action or failure to take action does not amount to a stay of adjudication. In the absence of some indication on the record that the court intended to stay adjudication, we will not presume that it intended to do so. Accordingly, we reject the state's and court of appeals' characterization and will not construe the district court's failure to impose sentence as a stay of adjudication.

## II

 In the absence of a stay of adjudication or a final judgment on the burglary count, the gross misdemeanor sentence in this case was not appealable. Minn. R.Crim. P. 28.04, subd. 1(2). However, the state argued that the district court had an obligation to move to the sentencing phase on the felony burglary count and could not indefinitely defer sentencing. In this context, a petition for an extraordinary writ may have been the appropriate means for the state to seek relief. *See* Minn.Stat. § 586.01 (2000); Minn. R. Civ.App. P. 120.

 We have previously approved treating an improper appeal as a petition for an extraordinary writ. *See Pflepsen*, 590 N.W.2d at 764 (concluding that court of appeals had authority to treat improper notice of appeal as petition for writ of prohibition). In this case, a writ may be appropriate because the relief the state seeks is in the form of an order to compel the district court to perform a function the state claims is required. Moreover, the absence of the right of appeal may leave the state with no adequate remedy in the

---

2. *See, e.g.,* Black's Law Dictionary 335 (7th ed.1999) (defining conviction as "[t]he judgment (as by a jury verdict) that a person is guilty of a crime").

ordinary course of law. *See* Minn.Stat. § 586.02 (2000). Under these particular circumstances, we will construe the state's appeal as a petition for a writ of mandamus.

Our authority to issue a writ of mandamus is statutory, and it may be issued to any inferior tribunal to compel the performance of an act which the law specifically enjoins as a duty resulting from an office, trust, or station. Minn.Stat. § 586.01. Before we issue a writ of mandamus to a lower court, we must first conclude that the law specifically requires that court to perform a judicial duty. But even if the court has such a clear judicial duty, if there is some other plain, speedy, and adequate remedy in the ordinary course of law, the writ may not issue. Minn.Stat. § 586.02. A writ may require a lower court to exercise its judgment, but it cannot control judicial discretion. Minn.Stat. § 586.01.

It is important to distinguish situations in which a duty is mandated and a writ may issue and situations in which a writ may not issue because the duty to act is discretionary and it is within the court's discretion whether to take certain actions. We have denied a petition for writ of mandamus because the requested judicial action was not mandatory but instead discretionary on the part of the lower court. *See State v. Davis,* 592 N.W.2d 457, 459 (Minn. 1999). We have also explained that a writ of mandamus may issue to compel such a discretionary act only when failure to perform that act "was so arbitrary and capricious as to constitute a clear abuse of discretion." *State v. Pero,* 590 N.W.2d 319, 323 (Minn.1999) (citation omitted).

District courts are generally required to exercise their duty at the conclusion of a bench trial in a criminal case by making a final disposition. Specifically, if there is a finding of not guilty or some other reason

that the defendant is entitled to be discharged, judgment must be entered accordingly. Minn. R.Crim. P. 27.03, subd. 7. Likewise, if there has been a finding of guilt, a judgment of conviction should be entered such that the conviction is formally adjudicated. *See* Minn. R.Crim. P. 27.03, subd. 7 (regarding proper judgment of conviction); *Pflepsen,* 590 N.W.2d at 767 (explaining that a conviction appearing in the official judgment of conviction or conviction order entered by the court has been formally adjudicated). A judgment on the record makes clear to the defendant the exact nature of the adjudication. Further, a properly entered conviction provides the basis for criminal history points that may become significant to the defendant later in life. Such a record provides the groundwork for the parties to appeal and for the appellate courts to understand what happened at the district court level and conduct a proper review.

■ There are, however, some circumstances in which the usual procedure of entering judgment is not followed. For example, under certain circumstances, Minn.Stat. § 609.04 (2000) prohibits the formal adjudication of conviction such that no entry of judgment or order of conviction may appear in the record. Specifically, section 609.04 prohibits conviction on lesser-included offenses. *Pflepsen,* 590 N.W.2d at 767 (prohibiting "formal adjudication of guilt" of included offenses under section 609.04); *LaTourelle,* 343 N.W.2d at 284 (requiring district court to vacate the formally adjudicated convictions for lesser-included offenses; explaining that the proper procedure is for the court to retain the unadjudicated convictions). Nevertheless, when formal adjudication and entry of judgment are prohibited, a final disposition must still be made and entered on the record reflecting what action was taken by the court. Thus, even when there is a stay

of adjudication, a final disposition must be made and the stay of adjudication must be entered on the record.

■ In summary, a final disposition must be entered reflecting what action the court performed. Among the several options available to a court at the end of a criminal trial are: (1) finding of not guilty with judgment of acquittal entered accordingly; (2) finding the defendant otherwise entitled to discharge with judgment entered accordingly; (3) finding of guilty with judgment of conviction entered accordingly; (4) retaining of unadjudicated convictions under section 609.04; or (5) issuing a stay of adjudication by statute or under *State v. Krotzer*, 548 N.W.2d 252 (Minn.1996), with final disposition entered on the record accordingly.

■ Here, the district court did not enter judgment on the burglary count after making a finding of guilt nor did it make a final disposition by entering a stay of adjudication or other action on the record. Apparently, because the court did not want to sentence Hoelzel as a burglar, it stopped the ordinary criminal procedure before completion and, by doing so, indefinitely deferred a duty it was required to perform. Moreover, the court essentially invited the state to take an appeal to have the appellate courts tell it what more, if anything, needed to be done. Therefore, the mandamus remedy is available to the state because under these circumstances the court was required to take some action and it did not do so.

We conclude that the district court has failed to make a final disposition—an action it was required to take under the law. Therefore, we remand to the district court with the instruction that it make a final disposition with respect to the burglary count and enter its disposition on the record. Because the relief sought was a writ of mandamus, we cannot and do not dictate to the court *how* to exercise its judgment. Rather, we only order it to take appropriate action under the law and properly exercise its discretion in so doing.[3]

We affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

**3.** Given the procedural status of this case, we do not address the question of whether a stay of adjudication is a disposition available at this stage in the proceedings.