**STATE of Minnesota, Appellant,**

v.

**Dennis Gordon LEE, Respondent.**

**No. A04–1402.**

Court of Appeals of Minnesota.

March 7, 2005.

Mike Hatch, Attorney General, St. Paul, MN; and Joe E. Judd, Assistant Todd County Attorney, Long Prairie, MN, for appellant.

Robert E. Pottratz, Melrose, MN, for respondent.

Considered and decided by HALBROOKS, Presiding Judge, RANDALL, Judge, and KLAPHAKE, Judge.

## OPINION

KLAPHAKE, Judge.

After respondent Dennis Gordon Lee pleaded guilty to charges of driving after revocation and failure to provide insurance, the district court granted a stay of adjudication and imposed conditions that included service of jail time. The state filed this appeal, arguing that the district court erred in sentencing Lee, over the state's objection, to a stay of adjudication in the absence of a clear abuse of discretion by the state in the exercise of its charging function. Lee challenges the state's right to appeal. Because Minn. R.Crim. P. 28.04 does not authorize an appeal by the state from a sentence in a non-felony case, we dismiss this appeal.

## FACTS

On February 9, 2004, Lee's vehicle was stopped by police officers in the City of Long Prairie, which is located in Todd County, Minnesota. The officers stopped Lee because one of them recognized him and knew, based on a check of his license a few days earlier, that his license was revoked. Lee also admitted to the officers that he did not have insurance on the vehicle he was driving.

Lee was charged by formal complaint with three misdemeanors: (1) driving after revocation under Minn.Stat. § 171.24 (2002); (2) failure to provide proof of insurance under Minn.Stat. § 169.791 (2002); and (3) failure to provide insurance under Minn.Stat. § 169.797 (2002).

On June 21, 2004, Lee pleaded guilty to driving after revocation and failure to provide insurance. The court ordered a presentence investigation (PSI) and set a date for sentencing.

The transcript of the July 28, 2004 hearing begins: "Then I'll call for sentencing hearing the matter of the *State v. Dennis Gordon Lee.*" The PSI was submitted and indicated that Lee "lost his license" in 1999 and 2004 for failure to pay child support. The PSI further noted that "there appears to be a disagreement regarding the possibility of defendant receiving a stay of adjudication" and that "I cannot recommend a stay of adjudication in this matter." The PSI finally noted that "should [Lee] get adjudicated on this matter, he will lose his license for another year[.]"

The prosecutor argued that there was no abuse of discretion in the charging decision, that there were no substantial and compelling reasons for a stay of adjudication, and that the collateral consequence of yet another license violation was not a special circumstance warranting a stay of adjudication. Defense counsel argued that none of Lee's license violations involved driving conduct and that his record was driven by economics: (1) his first violation occurred at age 21 when he lost his license as a consequence of failure to provide insurance; (2) he thereafter had two violations for driving after withdrawal; (3) his license was reinstated, but thereafter suspended for failure to pay a fine; (4) after "falling behind on his child support," his license was again suspended; (5) during this suspension, he incurred two more violations for driving after withdrawal; and (6) after his license was reinstated, he was laid off of work and could not afford insurance, which resulted in another license withdrawal. At the time of the hearing, Lee's license had been reinstated. In addition, Lee had insurance, was current in his child support, was living in Long Prairie, and was employed by a St. Cloud construction firm and working in Clearwater. Defense counsel pleaded with the district court to help Lee get off this "merry-go-round." In response, the prosecutor objected and argued that "I don't think

that a stay of adjudication is an appropriate sentence[.]"

The district court agreed with the state that this was not "an abuse of discretion in charging." The district court went on to state: "I also believe ... that if we have a full-time employed person now with a driver's license, with insurance, with child support ... I don't think we serve the public interest by stopping that. And so, I am going to stay adjudication on some pretty strict conditions[.]" The district court further noted that Lee's guilty plea represented a violation of a prior probationary order.

The district court imposed the following conditions on Lee: (1) pay $500 toward the cost of prosecution on each of two counts; (2) serve 90 days in county jail on each of two counts, one-half suspended; and (3) have no further moving, license, or insurance violations and file proof of insurance every three months with the court. The court also issued a sentencing order with the following conditions: (1) 45 days in jail on each of two counts, stayed for one year; (2) 45 days to be served in jail at defendant's expense on each of two counts; (3) $60 surcharge on each plea; (4) $5 law library fee on each plea; and (5) $500 prosecution fee on each plea.

## ISSUE

Can the state appeal from a stay of adjudication in a non-felony case that includes service of jail time?

## ANALYSIS

 The right of the state to appeal in criminal cases is strictly construed. *State v. Kivi*, 554 N.W.2d 97, 100 (Minn. App.1996) (stating that state's right to appeal in criminal case is strictly construed, and state may appeal only where expressly authorized by statute), *review denied* (Minn. Dec. 17, 1996); *State v. Rhines*, 435

N.W.2d 542, 544 (Minn.App.1989) (same), *review denied* (Minn. Mar. 17, 1989). Under the rules of criminal procedure, the state may appeal from a sentence only in a felony case. Minn. R.Crim. P. 28.04, subd. 1(2).

In *State v. Thoma*, 569 N.W.2d 205, 208 (Minn.App.), *aff'd mem.*, 571 N.W.2d 773 (Minn.1997), this court held that a district court's stay of adjudication in a non-felony case was appealable by the state as a "pretrial order" under Minn. R.Crim. P. 28.04, subd. 1(1). *Thoma*, 569 N.W.2d at 206–07, involved four petty misdemeanors for shoplifting and one misdemeanor for underage drinking and driving. In each of the four petty misdemeanors, the district court accepted the defendants' guilty pleas and stayed adjudication; our decision does not specify whether there were other consequences. *Id.* In the case involving the underage drinking and driving charge, the defendant agreed to plead guilty in exchange for the prosecutor's agreement that there would be no "executed jail time." *Id.* at 207. The district court stayed adjudication for 90 days and ordered the defendant to pay $50 for the costs of prosecution and to comply with other conditions that were not specified in our decision. *Id.* Thus, none of the *Thoma* cases resulted in served jail time as a condition of the stay of adjudication.

*Thoma* has been followed in subsequent cases from this court. *See, e.g., State v. Ohrt*, 619 N.W.2d 790, 792 (Minn.App. 2000); *Smith v. State*, 615 N.W.2d 849, 851 (Minn.App.2000), *review denied* (Minn. Sept. 26, 2000); *State v. Prabhudail*, 602 N.W.2d 413, 414 (Minn.App.1999), *review denied* (Minn. Jan. 18, 2000). However, none of these cases discuss or appear to involve service of jail time. Although one case from this court involved a four-day jail sentence, the majority in that case did not discuss the jurisdictional issue, even

though the dissent did. *See State v. Scaife*, 608 N.W.2d 163, 164–65 (Minn.App. 2000), *review denied* (Minn. May 16, 2000). Because this case involves an appeal from a stay of adjudication that included service of jail time, we believe it must be characterized as an appeal from a non-felony sentence and not from a pretrial order as in *Thoma.*

In addition, for all intents and purposes, the stay of adjudication here was treated as part of a sentencing proceeding, not as part of any pretrial proceedings. In particular, after Lee entered his guilty plea on two misdemeanor charges, the district court ordered a PSI and set a date for sentencing. At that hearing, the state was given an opportunity for allocution, during which the prosecutor argued that a stay was not an appropriate sentence for Lee. The district court issued an order in which it recited two misdemeanor counts, imposed a jail sentence of 45 days on each of these two counts, and ordered payment of the costs of jail, surcharges, and law library fees, all of which are generally associated with sentencing—and not pretrial—orders. The state's appeal papers indicated that it was appealing from the "sentence" of July 28, 2004 and that its appeal challenged "the district court's stay of adjudication of the guilty plea as part of the court's sentencing order." Characterizing Lee's stay of adjudication as a "pretrial" order ignores these additional facts, which are unique to sentencing proceedings.

 Finally, our decision here is entirely consistent with the supreme court's description of a stay of adjudication as a "final disposition of a criminal case" and a "sentencing option." *State v. Krotzer*, 548 N.W.2d 252, 254 (Minn.1996). Moreover, the state has not called our attention to any authority that would authorize the imposition of jail time as a sanction at pretrial stages of criminal proceedings, or at any other time before sentencing, and we are aware of no such authority. Unlike the consequences in *Thoma*, the consequences here, which included service of 45 days in jail, cannot be characterized as anything but a sentence. We therefore distinguish this case from *Thoma* and expressly limit our holding to cases involving non-felony stays of adjudication that include service of jail time.[1]

## DECISION

Because the non-felony stay of adjudication involved here included jail time that must be served, it cannot be considered a "pretrial" order subject to appeal by the state. We therefore dismiss this appeal as unauthorized by Minn. R.Crim. P. 28.04. *See State v. Loyd*, 627 N.W.2d 653, 655 (Minn.App.2001) (dismissing state's appeal from district court's modification of gross-misdemeanor sentence).

**Appeal dismissed.**

RANDALL, Judge (concurring specially).

"Legal interpretation takes place in a field of pain and death."

This is true in several senses. Legal interpretive acts signal and occasion the imposition of violence upon others: A

---

1. We recognize that the supreme court has issued decisions in at least two cases involving appeals by the state from non-felony stays of adjudication. *See, e.g., State v. Cash*, 558 N.W.2d 735 (Minn.1997); *State v. Foss*, 556 N.W.2d 540 (Minn.1996). We further recognize that the supreme court has cited *Thoma* as authority in at least two cases involving felony appeals. *See, e.g., State v. Hoelzel*, 639 N.W.2d 605, 608 (Minn.2002); *State v. Verschelde*, 595 N.W.2d 192, 196 (Minn.1999). In none of these cases, however, did the supreme court decide the issue presented here: whether the state has the right to appellate review of a non-felony stay of adjudication that includes jail time that must be served.

judge articulates her understanding of a text, and as a result, somebody loses his freedom, his property, his children, even his life. Interpretations in law also constitute justifications for violence which has already occurred or which is about to occur. When interpreters have finished their work, they frequently leave behind victims whose lives have been torn apart by these organized, social practices of violence. Neither legal interpretation nor the violence it occasions may be properly understood apart from one another.

Robert M. Cover, *Violence and the World,* Yale L.J. 1601, (July 1986).

I fully concur with the majority's reasoning that in looking at the state's (appellant's) brief and the defendant's (respondent's) brief, and the sentencing order of the district court, which included a monetary fine, a certain amount of time in jail, surcharges, and costs, the only possible conclusion is that appellant, respondent, and the district court treated this case as a *sentence* and then an *appeal* from that sentence. The statement of the case for appellant said:

> At a *sentencing hearing* in the instant case, the district court judge *sentenced* the defendant to a stay of adjudication over the state's objection in a non-felony case in the absence of a clear abuse of discretion by the state in the exercise of the charging function. The state *appeals from that sentence.*

On page 11 of the state's appellant's brief, under the heading "Legal Analysis," the first sentence is "the state is *appealing the sentencing order* of the district court in a non-felony case."

This was an appeal from a misdemeanor sentence. As the majority points out, Minn. R.Crim. P. 28.04 does not authorize sentencing appeals by the state on gross misdemeanors or misdemeanors.

There is some authority that appears to go the other way. *See State v. Thoma,* 569 N.W.2d 205, 208 (Minn.App.1997) *aff'd mem.* 571 N.W.2d 773 (Minn.1997). An examination of misdemeanor sentencing cases by the Minnesota Supreme Court shows that the 28.04 issue has never been precisely identified by the Minnesota Supreme Court and addressed. *State v. Cash,* 558 N.W.2d 735 (Minn.1997), *State v. Foss,* 556 N.W.2d 540 (Minn.1996).

The issue is simple. If stays of adjudication on felony charges are handled as sentencing appeals, why are not misdemeanor charges on stays of adjudication handled as sentencing appeals (and thus barred by Minnesota Rules of Criminal Procedure 28.04).

The seminal case in stays of adjudication is *State v. Krotzer,* 548 N.W.2d 252 (Minn. 1996). In *Krotzer,* a felony charge of third degree criminal sexual conduct, as this misdemeanor case of *Lee,* from the state's appeal of *Krotzer's* sentence to the Minnesota Court of Appeals, and on to the Minnesota Supreme Court by certiorari, *Krotzer* was *in all respects* handled as a sentencing appeal. *Id.* at 254. It was understood to be a sentencing appeal by the state pursuant to the Rules of Criminal Procedure that allowed the state or the defendant to appeal from a sentence in a felony case. *Id.* at 255. Its posture on appeal was absolutely identical to the posture of *State v. Lee. Krotzer's* sentence included terms of probation and terms of incarceration as part of probation. *Id.* at 253. Those terms were imposed on defendant Krotzer and he had to abide by them and had to serve his jail time. *Id. Krotzer* involved a sentencing hearing and a sentencing order. Then, there was a stay of adjudication of guilt to allow a deserving defendant to avoid the label of "sexual predator," a harsh collateral consequence.

*Id.* at 254. Identical to *Krotzer*, in this case, there were terms of probation which included some incarceration and some fines and then a formal stay of adjudication of guilt to enable the defendant to get on with his life, provide child support, and keep his driver's license the loss of which would be a harsh collateral consequence.

I can only conclude it is unethical to disenfranchise an entire class of criminal defendants in the State of Minnesota, meaning the thousands of Minnesotans each year who are charged with misdemeanors, by depriving them of the benefit of Minn. R.Crim. P. 28.04. When their criminal charge is handled, not just like, but identical to the felony charges in *Krotzer* they are entitled to point to Minn. R.Crim. P. 28.04 when the state appeals claiming their sentence was too lenient.

Not only is there no rule or law stating that stays of adjudication in felonies are "different" from stays of adjudication for misdemeanors, we are faced with the long-time settled law that if there is an ambiguity, penal statutes are construed *strictly in favor of the defendant* and against the state. *State v. Serstock*, 402 N.W.2d 514, 516 (Minn.1987), *State v. Zacher*, 504 N.W.2d 468, 473 (Minn.1993), *State v. Haas* 280 Minn. 197, 200, 159 N.W.2d 118, 121 (Minn.1968).

In *State v. Thoma*, our court found that non-felony stays of adjudication at sentencing were somehow "different" and the essential component of the reasoning was "the stay of adjudication functions in effect as a continuance for dismissal, which can fairly be characterized as a pretrial order." 569 N.W.2d 205, 207 (Minn.App.), *aff'd mem.*, 571 N.W.2d 773 (Minn.1997),

There is no other way to characterize this argument, but to take it head-on. First, the Minnesota Supreme Court, in thoroughly analyzing the stay of adjudication issue in *Krotzer*, not only did not look upon it as a "continuance for dismissal," but in all respects treated it as a *sentencing appeal by the state*. Further, we note that misdemeanor sentences in Minnesota and "continuance for a dismissal" in Minnesota not only are different, but have never once in the State of Minnesota been used in the same breath. No district court judge in the State of Minnesota ever, including any judge sitting now or any judge sitting previously, or any Minnesota District Court Judge sitting on the Minnesota Court of Appeals or the Minnesota Supreme Court ever, when the record showed a continuance for dismissal (for example let us say six months or twelve months) said to the defendant at the end of hearing:

> By the way, before you start your six months of a continuance for a dismissal premised on your committing no same or similar offenses in the next six months, I'm going to sentence you to 90 days in the Hennepin County Workhouse, and I'm going to fine you $500. I'm going to stay the execution of 45 days of that sentence in the workhouse; I'm going to stay execution of $250 of the $500 fine, and put you on probation for six months on the usual terms of probation, including being on your best behavior and committing no other offenses, in addition, I'm going to impose a surcharge on the criminal fine and a library fine.

This has never been done in the State of Minnesota, and *never will be*. No judge imposes a "sentence" at the start of the informal probationary period of a continuance for dismissal. The sentence is imposed *only* if during the continued period, there is a charge of a violation and then a finding of guilty. Only at that time then is the "sentence" imposed.

To disenfranchise people who are charged with misdemeanors and deprive

them of the due process benefits of Minn. R.Crim. P. 28.04, which prevents the state from appealing a misdemeanor sentence that they thought too lenient on the argument that a misdemeanor sentence is not really a sentence but is a "continuance for dismissal," and therefore is some kind of pretrial order, does violence to the English language. It does violence to the constitutional right of people charged with misdemeanor crimes to be afforded due process.

The anomaly of *Thoma* has been criticized by Minnesota district court judges and commentators. Minnesota Practice, McCarr & Nordby, § 37.17, says in relevant part:

> In a highly questionable decision, it has been held that a trial judge's stay of adjudication is a "pre-trial" order, and therefore, appealable by the State (though it is always a post-trial or post-guilty plea act). This decision not only does violence to the plain meaning of the term "pre-trial," but appears contrary to the rule mentioned above that the State's right to appeal must be narrowly construed and exists only where expressly authorized.

9 Henry W. McCarr & Jack S. Nordby, Minnesota Practice § 36.3 (3d ed.2001). (Footnotes omitted).

*Thoma* goes on to buttress its argument that a misdemeanor sentence is not a sentence when it's a stay of adjudication because of some claimed lack of finality or some lack of a "final judgment." *Thoma* at 207. It is true that a stay of adjudication on a sentence means that guilt is not formally entered, but that is just a mechanical device to help a person clear his criminal record. As the Minnesota Supreme Court stated in *State v. Hoelzel,* 639 N.W.2d 605, 610 (Minn.2002):

> Nevertheless, when formal adjudication and entry or judgment are prohibited, a final disposition must still be made and entered on the record, reflecting what action was taken by the court. Thus, even when there is a stay of adjudication, a final disposition must be made and stay of adjudication must be entered on the record.

The *Hoelzel* case was on another issue, but I cite to it to point out the fact that if there is a "stay of adjudication" that does not mean that you did not have a real court proceeding with a real sentence and conditions of that sentence. Going to jail as part of the terms of probation is part of a real sentence. I cite *Hoelzel* to point out that even when there is a stay of adjudication, that fact is still part of the official record. The fact that the guilt was not formally adjudicated *did not prevent the state from appealing the sentencing* order in *Krotzer* and does not prevent the state from appealing the sentencing in this case. Minn. R.Crim. P. 28.04 prevents the state from appealing in this case.

Stays of adjudication are similar to stays of imposition of sentence. With a stay of imposition, if the defendant gets through the probationary period without revocation his felony is marked down in Minnesota to a misdemeanor. With a stay of adjudication if you successfully get through the period of probation, your record is marked down to a "zero" conviction. The state has no reason to complain. The state routinely agrees to stays of imposition and has no power to force the district court judge not to use them. Thus high-level felonies can be marked down to misdemeanors. In *Krotzer* (third degree criminal sexual conduct) the state recommended a stay of imposition (to its credit, a favorable recommendation) and thus agreed to accept a "markdown" for the serious felony to a misdemeanor. *Krotzer* at 253. That is far less of a markdown than a stay of adjudication on a misdemeanor or a petty misde-

meanor where the final result is no conviction.

The identical format was recognized in *State v. Lattimer.* *Lattimer* involved the serious felony of criminal vehicle operation resulting in great bodily harm. 624 N.W.2d 284 (Minn.App.2001), Minn.Stat. § 609.21 subd. 2 (1998). As in *Krotzer,* there was no abuse of discretion in the charge. In *Krotzer,* even though the judge disagreed with the charge because it carried the sexual predator label, it was nowhere near "an abuse of discretion" charge. If victims and victims' families could control domestic abuse charging by claiming the charge "is egregious and an abuse of discretion" half of domestic assaults in this state would never be charged, and half of those charged would be dismissed between charge and trial. It is not that uncommon for victims who were close to the defendant to have some reluctance to proceed with criminal charges when the full effects of that criminal charge are known, and the heat of anger from being assaulted has worn down. Wisely, we do take a victim's feelings into account as one element of sentencing but it is not determinative. It would be outrageous to claim that the county attorney in *Krotzer* abused his discretion in bringing the charge. The charge fit the facts. As *Krotzer* points out, the prosecution's disagreement with the sentencing judge was the sentence, not the charge. The charge in *Lattimer* fairly fit the facts. There, as in *Krotzer,* a conscientious trial judge worked hard to develop a sentence commensurate with remorse, rehabilitation, and the avoidance of a negative collateral consequence—meaning the loss of defendant's driver's license which would have hampered the bond between the defendant, the victim and the victim's family. Both *Krotzer* and *Lattimer* point out the "myth" of "interference with prosecutorial discretion." In both cases the state picked

the charge, proved up the charge, and merely had a *sentencing* disagreement with the court, not a charging disagreement. In *Krotzer,* the court stated:

[T]he prosecutor's power to file charges and prosecute an individual was not infringed upon here. As *Krotzer* states, the Carver County prosecutor investigated the allegations against Krotzer, filed criminal charges, obtained a guilty plea, and recommended a disposition and sentence to the court. The trial court then postponed acceptance of the plea and placed Krotzer on probation, but this did not affect the prosecutor's carefully defined role. *See Olson,* 325 N.W.2d at 18. The final disposition of a criminal case is ultimately a matter for the presiding judge. As we stated in *Olson,* once the legislature has defined the range of punishments for a particular offense, it cannot "condition the imposition of the sentence by the court upon the prior approval of the prosecutor." *Id. See People v. Superior Court of San Mateo County,* 11 Cal.3d 59, 113 Cal.Rptr. 21, 26, 520 P.2d 405, 410 (1974) (prosecutor may not "veto" trial judge's decision to divert defendant into pretrial treatment program because "disposition is a function of the judicial power no matter what the outcome").

*Krotzer* at 254.

Both *Krotzer* and *Lattimer* are classic cases of nothing more than a stayed sentence, akin to a dispositional downward departure. Minn. Sent. Guidelines II. D.2a. There is no logical reason for some of *Krotzer's* progeny to go into flights of fancy about "undefined special circumstance." *Krotzer* is a good case that is an effective tool for district court judges when exercising their independent right to fashion a sentence to fit the ultimate facts of a case. The ultimate facts are never known until the conclusion of the pre-sentence

investigation, and or, the sentencing hearing when the defendant and his attorney, and the state have the right of allocution. I agree that the legislature sets the maximum penalty for crimes, but it cannot set individual sentences for crimes "that have yet to be committed" by defendants years to come in the future. As *Krotzer* points out, the inherent[2] power of the judiciary to set the particulars of a sentence is inherent and final. *Krotzer* at 255.

If you acknowledge that a stay of adjudication, like a stay of execution or a stay of imposition, is just a lenient reasonable sentence fashioned on the facts, and is just a dispositional downward departure, the state can stop crying "that the sky is falling down" when there is a stay of adjudication.

A respected commentator stated in relevant part:

A stay of adjudication is essentially a continuance of sentencing without final adjudication of guilt, usually upon certain conditions, and with the prospect of avoiding a conviction. In *State v. Krotzer,* the Minnesota Court of Appeals and Supreme Court, in well-reasoned opinions, recognized that the stay of adjudication is an inherent judicial power, which does not infringe upon the executive branch's domain under the separation of powers doctrine. Then, however, in *State v. Foss,* a cursory and very poorly reasoned order, the Supreme Court greatly confused a situation which had been well-analyzed in *Krotzer.* The *Foss* order suggests that a stay of adjudication is appropriate only where "special circumstances" in a record display a *"clear abuse of discretion* in the exercise of the charging function." But this is not what the *Krotzer* opinion said, and it is entirely inconsistent with *Krotzer's* correct analysis of the separation of powers doctrine. The *Foss* order will not bear scrutiny and it is to be hoped the court will abandon it.

Two things should be obvious here, and appeared to be in *Krotzer.* First, the *accusatory* function is inherently and exclusively an executive function so long as probable cause is shown, the statute of limitations has not run, and there is no other fatal defect in the charge, the courts have no right or power to interfere with it. Second, the *sentencing* decision is inherently and exclusively judicial, with the sentencing parameters established by the legislature. Prosecutors may not control the decision, beyond the right to advocate for a particular disposition. The *Foss* court appears momentarily to have lost the understanding of this that it had demonstrated just months earlier in *Krotzer.*

The idea that the remedy for a clear abuse of discretion in charging is a stay of adjudication is insupportable. First, if the charge is constitutional and otherwise lawful, the courts have no right to undo it. Second, if it is *not* constitutional or lawful, the only and obvious remedy is immediate dismissal, not a stay of adjudication. *Foss* thus stands for the wholly untenable proposition that a defendant who has been *wrongly accused* may be placed upon probation and even jailed as a condition of probation and, of course, ultimately convicted if the probation is violated.[3]

---

2. The clear inherent power of the judiciary to fashion a sentence as set out in *Krotzer,* eliminates the state's attempt to control stays of adjudication by way of Minn.Stat. 609.095, subd. b.

3. *See* McCarr and Nordby footnote # 19

The legislature has attempted to remove a judge's power to stay adjudication, except by agreement of the parties, but under the separation of powers, as discussed in *Krotzer*, this is clearly an invalid incursion into the judicial sphere by the legislature.

The *Foss* order has had a number of unfortunate consequences. It confused the law on the separation of powers in a very important area. Because it did not overrule or reverse *Krotzer*, it left the bench and bar with two conflicting, and ultimately irreconcilable, decisions to struggle with. And it deprived trial judges of a sometimes very important, useful, and productive tool for dealing with the disposition of particular cases. The Supreme Court would do a considerable service to the bench, the bar, and the administration of justice if it would promptly abrogate the *Foss* order and reaffirm the validity of the *Krotzer* opinion.

A judge staying adjudication does not accept the guilty plea.

The defendant, however, may be placed in jail as a condition of the stay.

A stay of adjudication is specifically provided for by statute for certain drug offenses. Because of the separation of powers question discussed above, however, this provision is probably invalid and superfluous, since the power is inherent in the judiciary independent of the statute. A similar provision applies to juveniles.

Recent studies have repeatedly shown that members of minorities are prosecuted with a frequency and sentenced with a severity in great disproportion to the representation in the population at large. A part of this very serious problem is that minorities are much more often arrested and prosecuted for low-level offenses, usually in relatively distressed areas of large cities. This, in turn, results in criminal records which interfere with employability (and thus lead to public dependence and further crime), and enhance the seriousness of later charges and penalties. The stay of adjudication is (or was, before the *Foss* decision, and could be again if the court would reverse it) a device with which trial judges can to a degree temper this insupportable process of stigmatizing minorities.

This is not to say, of course, that a defendant's race is in itself a proper basis for a sentencing decision; clearly it is not. But trial judges are well informed as to the total circumstances of an offense and an offender; they can draw upon their experience of hundreds and thousands of cases; they are familiar with arrest and prosecution practices within their communities and are thus able to discern disparate treatment of potential offenders in different parts of a jurisdiction. Yet, judges also realize that in most of these instances the prosecutor has not "abused discretion" in charging the defendant; there is usually ample probable cause the offense was committed. Most of these defendants are pro se or represented by public defenders, whose caseloads are often intolerably heavy. Plea bargains are offered at initial appearances which result in little or no penalty beyond a day or two in jail, and which defendants naturally accept. Thus, there is little incentive to dispute the issues involved. This saves the courts the enormous expense of trial of these offenses. But the cases nevertheless create criminal records (and incidentally fill already overburdened jails). It is highly desirable for judges to have the power in these circumstances to stay adjudication, in appropriate cases, and provide programs to help the offender avoid further mis-

conduct and spare the public the grief and expense it causes.

Neither defense lawyers nor judges should abandon the hope that the *Foss* ruling will be altered. Prosecutors, remembering the duty ultimately to seek justice, not merely convictions, should also be open to more sympathetic consideration of stays of adjudication.

9 Henry W. McCarr & Jack S. Nordby, Minnesota Practice § 36.3 (3d ed.2001). (Footnotes omitted).

It is true that the Supreme Court has granted further review of misdemeanor sentences, in *State v. Cash*, 558 N.W.2d 735 (Minn.1997), and *State v. Foss*, 556 N.W.2d 540 (Minn.1996). However, in neither case did the Minnesota Supreme Court precisely consider the jurisdictional issue of Minn. R.Crim. P. 28.04, nor did the Minnesota Supreme Court remand either of those two cases to this court to first decide the jurisdictional issue of Minn. R.Crim. P. 28.04.

I understand that *Thoma* still stands for the proposition that the state can appeal a misdemeanor sentence when there is a stay of adjudication on the theory that it is some kind of pretrial order. I do not attempt to overrule *Thoma*. I make no attempt at distinguishing *Thoma* from this case. Both cases are out there, *Thoma*, and now this one. The Minnesota Supreme Court will have to take a stand and make a definitive statement on the precise issue. The issue could be defined as follows:

When the charge is a felony and the district court judge hears a defendant's plea of guilty and finds that the essential facts of the charged crime are proven and goes on to order a pre-sentence investigation, and then at sentencing goes on to look at different sentencing options, including an executed sentence, a stay of execution, a stay of imposition, and a stay of adjudication and then selects a stay of adjudication, and the state appeals that sentence to an appellate court, that procedure is known as a sentencing appeal.

When the criminal charge is a misdemeanor (or a petty misdemeanor),[4] and, the identical format to *Krotzer* is followed, meaning a plea hearing, a determination that a crime was committed, a pre-sentence investigation, and then a sentence composed of probation, jail time, costs, surcharges, etc., and then a stay of adjudication, why is it not an appeal from that sentence the same as a sentencing appeal in *Krotzer* leading to the logical bar of Minn. R. Civ. Pro. 28.04.

I will not, at the expense of the thousands of Minnesotans who are charged with mis-

4. In *Thoma* four of the five charges were petty misdemeanors. *See* Minn.Stat. 609.02, subd. 4a. Since petty misdemeanors are not crimes and are subject only to a maximum fine of $300, the reasoning behind the bar of Minn. R.Crim. Pro. 28.04 to appeals of misdemeanor sentences (efficiency, avoidance of court clogging, no such things as "upward departures" in a misdemeanor sentence) applies double to petty misdemeanors! Why does the state waste the taxpayer's money by appealing a petty misdemeanor sentence to this court and then to the Minnesota Supreme Court?

If a sentence in a petty misdemeanor case is a $100 fine and the judge stays $50 of it, does the state go through the formality and expense of that appeal to argue that the district court should have set a fine of $150 and then only stayed $75 of it!

If the district court judges in *Krotzer* and *Lattimer* were entrusted with the discretion to employ a stay of adjudication on the felonies of third degree criminal sexual conduct and criminal vehicular operation resulting in great bodily harm, they should be trusted carte blanche to handle misdemeanors and the miscreants in *Thoma et al,* who shop lifted Similac for her baby and the other "Ma Barkers" who shop lifted $13.06 and $7.73 worth of food.

demeanors each year, *assume* that misdemeanor defendants are not clothed with the constitutional right of due process (meaning the benefit of statutes specifically addressing misdemeanors namely Minn. R.Crim. P. 28.04). The Minnesota Supreme Court will have to spell that out.

There is no other satisfactory answer than a full review of this precise question. Stays of adjudication, as the prosecution freely admitted in *Lattimer*, have been going on for years, both before and after *Krotzer*, and it's only the arbitrary state's appeal that questions their validity as a sentence.

This haphazard approach without a firm and final review by the Minnesota Supreme Court has led to the triangulation we now face between the district court judges, the Minnesota Court of Appeals, and the Minnesota Supreme Court.

In conclusion, the first issue the Supreme Court must address is a misdemeanor sentence when there is a stay of adjudication and the effect of Minn. R.Crim. P. 28.04. If 28.04 is specifically amended to carve out a prospective niche for appeals of stays of adjudication on misdemeanors, I suggest it is questionable public policy, but it would be an honest answer to the split on this court.

The second issue is the basis for a stay of adjudication on felonies, and on misdemeanors if an appealability exception is carved out. I suggest strongly that the justification be, as I stated before, nothing more complicated than the standard for a downward dispositional departure.

*Krotzer* is a good case. Let us all just read it and follow it.