*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A25-0173**

State of Minnesota,
Respondent,

vs.

Kyle Lloyd Ketterling,
Appellant.

**Filed January 26, 2026**
**Reversed and remanded**
**Slieter, Judge**

Olmsted County District Court
File No. 55-CR-22-3314

Keith Ellison, Attorney General, St. Paul, Minnesota; and

Michael Walters, Olmsted County Attorney, James E. Haase, Senior Assistant County Attorney, Rochester, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, John Patrick Monnens, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Smith, Tracy M., Presiding Judge; Slieter, Judge; and Harris, Judge.

**NONPRECEDENTIAL OPINION**

**SLIETER**, Judge

In this appeal after remand, appellant argues again that the threats-of-violence statute is unconstitutional as applied to social-media posts he made on the grounds that his posts are protected speech under the First Amendment. Appellant argues, in the alternative,

that the evidence presented at trial was insufficient to support the jury's finding of guilt. Because the state failed to prove reasonable apprehension, an element of the threats-of-violence offense, we need not decide the constitutional issue and conclude that appellant's conviction must be reversed.

## FACTS

Between April and May 2022, appellant Kyle Lloyd Ketterling frequently posted crude and abusive language on Gettr, a "micro-blogging platform" similar in functionality to X (formerly known as Twitter). During this time, Ketterling used his Gettr profile under the username "muslimehunter" to post, repost, and comment more than 1,900 times on the platform.

Many of Ketterling's Gettr posts, the parties agree, include political speech. Ketterling often stated his preferred political candidates, his stance on social issues, and his beliefs about the electoral process.

Some of Ketterling's posts allude to, or directly call for, violent action. He regularly posted, for example, that he believes in the necessity of "violent purge" and the coming of a "civil war." Ketterling often discussed killing large swaths of people, including federal, state, and local politicians; federal agents; Muslims; and undocumented immigrants. Concerned about the tenor of these posts, a content moderator for the platform reported them to law enforcement.

The Rochester Police Department had prior knowledge of Ketterling's online activity. In September 2021, the department received notification that Ketterling had sent emails to members of the local school board about COVID-19 masking requirements which

2

contained "some vaguely threatening comments." In December, the department received notification of another email Ketterling sent. This time, the vice president and general manager of KAAL, a television station in Rochester, reported that Ketterling had sent a threatening message through the news station's online portal. Finally, in January 2022, the Sergeant-at-Arms Office of the Minnesota House of Representatives reported a "threatening" message Ketterling had sent to a state representative through the representative's campaign website. None of these incidents resulted in criminal convictions.

In response to the Gettr content moderator's report, a Rochester police officer reviewed some of Ketterling's Gettr activity, which was publicly accessible on the platform. The officer expressed that he was "very alarmed" by the content of the posts, especially since Ketterling made them "in the recent wake of other shootings across the country." He was concerned that Ketterling would act in accordance with these posts because of Rochester's large Muslim population and because federal agents work there. While investigating Ketterling, the officer reviewed his criminal background. The officer discovered that Ketterling had no prior criminal convictions and had obtained a permit to carry a firearm. Police arrested Ketterling in mid-May 2022.

Respondent State of Minnesota charged Ketterling with four counts of threats of violence. *See* Minn. Stat. § 609.713, subd. 1 (2020). The message sent to the news station formed the basis of count 1. Count 2 was initially premised on Ketterling's written response to a Gettr user who opposed his political views, but the parties later stipulated that another Gettr post would be submitted to the jury as the basis for an amended count 2.

3

The following two Gettr posts formed the basis for counts 3 and 4 of the complaint respectively:

> This is going to happen here in my State of Minnisomaliota . . . BY FORCE IF NEED BE!!! Ellison and Omar are on our KILL LISTS as are EVERY MUSLIME in this State! This is a WARNING to EVERY MUSLIME-Assililate [sic], leave this country, or WE WILL HUNT YOU DOWN AND KILL YOU! Man, woman, or child! GET THE F--- OUT!!!
>
> This is a warning to ALL MUSLIME in the USA or Canada—assimilate, get out, or WE WILL KILL YOU! MAN, WOMAN, OR CHILD . . .”

Following a three-day trial, the jury acquitted Ketterling of count 1 but found him guilty of counts 2, 3, and 4. The district court entered a conviction on count 2, stayed imposition of Ketterling's sentence, and placed him on supervised probation for five years. The district court did not enter convictions on counts 3 or 4.

Ketterling appealed his count-2 conviction. His primary argument was that the threats-of-violence statute was unconstitutional as applied to his Gettr posts on the grounds that the posts were protected speech under the First Amendment. *State v. Ketterling*, No. A23-1411, 2024 WL 3934826, at *2 (Minn. App. Aug. 26, 2024). Reviewing only the count-2 conviction,[1] we agreed, holding that the charged social-media post did not constitute a "true threat" and was protected under the First Amendment. *Id.* at *4-5. We

---

[1] As in this appeal, Ketterling requested that this court review all three of the jury's guilty verdicts even though the district court convicted and sentenced him for only count 2. This court, however, declined to do so and only reviewed his conviction for count 2. *Ketterling*, 2024 WL 3934826, at *2 (citing *State v. Ickler*, 2 N.W.3d 577, 586-87 (Minn. App. 2024); then citing Minn. R. Crim. P. 28.02, subd. 2(1)).

concluded that because the post was directed at the "deep state" rather than any specific individuals or group it lacked the specificity needed for a statement to constitute a "true threat." Instead, we explained, "Ketterling's post . . . is crude political hyperbole stating opposition to the president." *Id.* at *4 (citing *Watts v. United States*, 394 U.S. 705, 705-08 (1969)). Accordingly, we reversed his conviction for count 2 and remanded the case to the district court for further proceedings regarding counts 3 and 4. *Id.* at *5.

The district court held a hearing upon remand in which it vacated Ketterling's conviction for count 2 and entered a judgment of conviction on count 3. The district court again stayed imposition of Ketterling's felony sentence subject to his compliance with probationary terms.

Ketterling appeals.

**DECISION**

Ketterling argues that the threats-of-violence statute, Minnesota Statutes section 609.713, subdivision 1, is unconstitutional as applied to his Gettr posts because his posts are protected political speech as opposed to "true threats." He also makes two arguments in the alternative, that the state presented insufficient evidence that, in context, his words created a reasonable apprehension that he would follow through with his threatened conduct and that venue was appropriate in Olmsted County. In making these arguments, Ketterling seeks reversal not only of his conviction on count 3 but also seeks review of the jury's finding of guilt on count 4.

We start with Ketterling's sufficiency-of-the evidence argument. We address this argument first because Minnesota appellate courts "avoid a constitutional ruling if there is

another basis on which a case can be decided." *State v. Plancarte*, 20 N.W.3d 30, 36 (Minn. 2025) (quotations omitted).

Ketterling challenges the sufficiency of the evidence underlying his conviction for threats of violence. He argues that the state's evidence failed to prove beyond a reasonable doubt one element of the offense—that his count-3 post, in the context it was made, created a reasonable apprehension that he would follow through with or act on any alleged threat. *See* Minn. Stat. § 609.713, subd. 1; *see also State v. Mrozinski*, 971 N.W.2d 233, 239-40 (Minn. 2022). The state responds that it presented ample evidence from which the jury could find that it had satisfied its burden to prove this element.

The Due Process Clause requires the state to prove every element of a charged offense beyond a reasonable doubt in order to convict a defendant. *State v. Paulson*, 22 N.W.3d 144, 150 (Minn. 2025) (citing *In re Winship*, 397 U.S. 358, 364 (1970)). To convict Ketterling of threats of violence, the state was required to prove, among other elements, that "in context, [his] words or conduct create[d] a reasonable apprehension that [he would] follow through with or act on" the alleged true threat. *Mrozinski*, 971 N.W.2d at 240; *see also* Minn. Stat. § 609.713, subd. 1.

In reviewing a challenge to the sufficiency of the evidence, appellate courts must "view the evidence in the light most favorable to the verdict and assume that the jury disbelieved any evidence that conflicts with the verdict." *State v. Culver*, 941 N.W.2d 134, 142 (Minn. 2020) (quotation omitted). The applicable standard of review depends on whether the conviction is supported by direct evidence or circumstantial evidence. *State v. Segura*, 2 N.W.3d 142, 155 (Minn. 2024). Direct evidence is evidence that is "based on

6

personal knowledge or observation and that, if true, proves a fact without inference or presumption." *State v. Harris*, 895 N.W.2d 592, 599 (Minn. 2017) (quotation omitted). Circumstantial evidence is "evidence from which the factfinder can infer whether the facts in dispute existed or did not exist." *Id.* (quotation omitted). This type of evidence "always requires an inferential step to prove a fact that is not required with direct evidence." *Id.* Both parties agree that the evidence related to the disputed element—reasonable apprehension—was circumstantial. We agree.

"Circumstantial evidence must form a complete chain that, in view of the evidence as a whole, leads so directly to the guilt of the defendant as to exclude beyond a reasonable doubt any reasonable inference other than guilt." *State v. Al-Naseer*, 788 N.W.2d 469, 473 (Minn. 2010) (quotation omitted). When an element is supported by circumstantial evidence, appellate courts apply a heightened, two-step standard of review. *Segura*, 2 N.W.3d at 155. First, we "identify the circumstances proved" by "winnow[ing] down the evidence presented at trial to a subset of facts that are consistent with the jury's verdict, and we disregard all evidence that is inconsistent with the verdict." *Id.* (quoting *State v. Hassan*, 977 N.W.2d 633, 640 (Minn. 2022) (quotation marks omitted)). Second, we "identify the reasonable inferences that can be drawn from the circumstances proved when viewed as a whole and not as discrete and isolated facts." *Id.* (quotations omitted). In step two, we "give no deference to the jury's choice between reasonable inferences." *Id.* "The State's circumstantial evidence is sufficient when the reasonable inferences are consistent with the hypothesis that the accused is guilty and inconsistent with any rational hypothesis other than guilt." *Id.* (quotation omitted).

We first identify the circumstances proved regarding reasonable apprehension that Ketterling would follow through with or act on the alleged threat. *Id.* These include:

- In late 2021 to early 2022, Ketterling had sent threatening messages to several Rochester public figures.
- The username "muslimehunter" is associated with an email address that includes Ketterling's name.
- Ketterling admitted to authoring at least one of the Gettr posts in his interview with law enforcement.
- The three charged posts were attributed to Ketterling's account, including the post underlying count 3.
- A Gettr content moderator contacted law enforcement based on Ketterling's online activity.
- Law enforcement contacted Gettr and requested subscriber information.
- The FBI notified Rochester law enforcement of Ketterling's online posts.
- Gettr provided the FBI with an Excel spreadsheet of Ketterling's online profile and activity.
- The FBI provided Rochester law enforcement with a digital copy of Ketterling's information.
- The law enforcement officer who interviewed Ketterling reviewed social-media posts on Gettr that were received as exhibits 3-13, 17, and 18.
- The same officer was "very alarmed" by the content of Ketterling's posts.
- The officer's concern stemmed from "other shootings across the county," the "high Muslim population" in Rochester, and the presence of "law enforcement agents in the city."
- This officer knew of Ketterling's threatening communications to Rochester community members as early as September of 2021.
- This officer had not personally interacted with Ketterling in the past.
- Before his arrest, law enforcement was aware that Ketterling had no criminal history.
- Officers arrested Ketterling on May 20, 2022, at his parents' home.

Having identified the circumstances proved, the second step of the sufficiency-of-the-evidence analysis requires us to examine the reasonable inferences from these circumstances and determine whether they are "consistent with the hypothesis that the accused is guilty and inconsistent with any rational hypothesis other than guilt."

*Segura*, 2 N.W.3d at 155 (quotation omitted). Ketterling contends that any reasonable inferences drawn from the circumstances proved are inconsistent with guilt because nobody testified that they had viewed the count-3 statement, and thus they could not reasonably apprehend that he would act on it. We agree.

It is important to note that each of Ketterling's threats-of-violence charges was associated with a particular social-media post. The count-3 post said:

> This is going to happen here in my State of Minnisomaliota . . . BY FORCE IF NEED BE!!! Ellison and Omar are on our KILL LISTS as are EVERY MUSLIME in this State! This is a WARNING to EVERY MUSLIME-Assililate [sic], leave this country, or WE WILL HUNT YOU DOWN AND KILL YOU! Man, woman, or child! GET THE F--- OUT!!!

This post was included in trial exhibit 21. Associating the charge with the threat of violence is necessary because, to be convicted under this statute, an individual's words or conduct must be unprotected by the First Amendment. *See Mrozinski*, 971 N.W.2d at 239 (holding that the threats-of-violence statute is not unconstitutionally overbroad but leaving open the possibility of as-applied challenges); *see also* Minn. Stat. § 609.713, subd. 1. For the purposes of this decision, we assume without deciding that Ketterling's count-3 post constitutes unprotected speech in the form of a true threat. *See Virginia v. Black*, 538 U.S. 343, 360 (2003) ("True threats encompass those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals." (quotation omitted)); *see also Mrozinski*, 971 N.W.2d at 238 ("Exceptions to First Amendment protections generally fall into several delineated categories," including "true threats." (citing *United States v. Alvarez*, 567 U.S.

9

709, 717 (2012))). To satisfy the reasonable-apprehension element of this offense, the state must have produced evidence that Ketterling's words created "a reasonable apprehension that [he] will follow through with or act on *the [true] threat*." *Mrozinski*, 971 N.W.2d at 240 (emphasis added).

Based on the circumstances proved, a reasonable inference one might draw is that the officer reasonably apprehended that Ketterling would act in some way. For example, the officer might have reasonably apprehended that Ketterling would follow through with the threats made in the social-media posts that the officer testified he reviewed (i.e., exhibits 3-13, 17, and 18). But the circumstances proved do not support a reasonable inference that Ketterling's words created a reasonable apprehension that he would follow through with the threat contained in the count-3 post. The jury could not make this inference because the officer who testified to being "very alarmed" by Ketterling's social-media posts did not testify that he had viewed *exhibit 21* which included the count-3 post.[2] In fact, the only person who testified about exhibit 21 was a Gettr employee, and he did not testify regarding the question of reasonable apprehension. In the context of a threats-of-violence conviction, it is crucial that the state prove reasonable apprehension based on the charged true threat because this approach guarantees that the state is punishing the defendant for constitutionally unprotected speech. *See id.* (requiring the state to produce evidence that a defendant's words created a reasonable apprehension that he will follow through with or act on "*the threat*"); *cf. Counterman v. Colorado*, 600 U.S. 66, 72

---

[2] The officer similarly did not testify to having viewed the count-4 post.

(2023) (recognizing that "true threats of violence . . . lie outside the bounds of the First Amendment's protection."). If reasonable apprehension could stem from a general concern that the defendant might act in some way rather than in accordance with a true threat, the state risks punishing an individual for constitutionally protected speech. Accordingly, based upon the evidence submitted to the jury on the specific post which underlies count 3, the circumstances proved do not support a reasonable inference consistent with guilt.

Finally, we must address the scope of our review. That is, whether we will review the jury's guilty verdict as to count 4 as Ketterling requests. "In the absence of a conviction, a defendant does not have a right to appellate review of a guilty verdict." *Ickler*, 2 N.W.3d at 586-87 (citing Minn. R. Crim. P. 28.02, subd. 2(1); *State v. Hoelzel*, 639 N.W.2d 605, 609 (Minn. 2002); *State v. Ashland*, 287 N.W.2d 649, 650 (Minn. 1979)). Here, the record is clear that the district court did not enter a conviction for count 4. Thus, our review is limited to addressing Ketterling's argument as it relates to count 3 and the associated conviction. Nonetheless, it should be clear that the evidence is insufficient to support the guilty verdict for count 4 for the same reason that the evidence is insufficient to support the conviction for count 3.

Because we have determined that the circumstances proved at trial do not support a reasonable inference that is consistent with Ketterling's guilt, the evidence was insufficient to prove beyond a reasonable doubt that Ketterling committed a threat of violence for the purposes of Minn. Stat. § 609.713, subd. 1. Accordingly, we reverse Ketterling's

conviction on count 3 and remand for further proceedings in the district court to address count 4.[3]

**Reversed and remanded.**

---

[3] Ketterling also claims that the state produced insufficient evidence of venue such that his constitutional right to "public trial by an impartial jury of the county or district wherein the crime shall have been committed" was not satisfied. Although the Minnesota Supreme Court recently held that "the *statutory venue* requirement [set forth in Minnesota Statutes section 627.01] is not an element of an offense," that case stemmed from a guilty plea and the court explained it "need not decide the circumstances under which a defendant may assert statutory venue rights after trial has begun." *Paulson*, 22 N.W.3d at 153 n.10 (emphasis added). Additionally, the court noted that the Vicinage Clause in article I, section 6, of the Minnesota Constitution was not implicated in that case because the appellant entered his guilty plea before the court impaneled a jury. *Id.*; *see also* Minn. Const. art. I, § 6 (stating that the accused in a criminal prosecution has "the right to a speedy and public trial by an impartial jury of *the county or district wherein the crime shall have been committed*, which county or district shall have been previously ascertained by law." (Emphasis added.)). We note the distinct procedural posture between *Paulson* and Ketterling's case—his stems from a jury trial that resulted in a guilty verdict. However, because we fully resolve this matter on other grounds, we do not reach this issue.